[Civ. No. 2078.   Fourth Appellate District.—August 10, 1938.]

In the Matter of the Estate of WESLEY S. CAMPBELL, Deceased.  MARTIN J. CAMPBELL et al., Respondents, v. THOMAS GETZ et al., Appellants.

Charles B. De Long for Appellants.

Frank M. Downer, Jr., for Respondents.

BARNARD, P. J.—Wesley S. Campbell died on October 4, 1935, leaving a will containing the following clause:

"All the rest, residue, and remainder of my estate, of whatsoever kind and nature and wheresoever situated, I give, devise and bequeath to the four chair officers of San Diego Lodge No. 168 Benevolent and Protective Order of Elks, being the four chair officers in office at the time of distribution of my estate, designated as 'Exalted Ruler', 'Exalted Leading Knight', 'Lecturing Knight' and 'Loyal Knight'. Such officers shall take the same free of any trust, but it is my expectation that they will employ the same for charitable purposes conformable to the policies of such San Diego Lodge No. 168, and I earnestly request them to make such use thereof. I particularly commend to them my friend May Skinner, if she should survive me, with the purpose that her needs be provided for should her own resources be insufficient."

The will was admitted to probate and in due course a final account and petition for distribution, with objections thereto, came on for hearing, it being stipulated that "the four chair officers" of this lodge were elected annually, and that the individuals who occupied those positions at that time were not the same individuals who had occupied them at the date of decedent's death. The court found that the quoted clause of the will is invalid and void as in contravention of the provisions of sections 715 and 716 of the Civil Code, and that the said Campbell died intestate as to the residue of his estate, and ordered the same distributed to his heirs at law. The four individuals who at that time held the designated positions in this lodge have appealed from the decree of distribution.

The sole question presented is whether this provision of the will is invalid because of a possibility that distribution of the estate might not take place for more than twenty-five years after the death of the testator. If distribution should be thus delayed the provision in question would contravene the rule against perpetuities (sec. 9, art. XX, State Const.),

and also section 716 of the Civil Code, which reads in part: "Every future interest is void in its creation which, by any possibility, may suspend the absolute power of alienation for a longer period than is prescribed in this chapter." This includes the provision of section 715 of that code that such a power shall not be suspended for more than twenty-five years from the time of the creation of the suspension, which in this case would be the date of the decedent's death.

The appellant relies particularly on the case of *Belfield* v. *Booth*, 63 Conn. 299 [27 Atl. 585]. That case involved a provision of a will which left certain property in trust, the trust to continue for fourteen years after the executor "has settled with the judge of probate". In considering this provision, under the common-law rule against perpetuities, it was held that the time set for the division of the trust estate was not so remote as to contravene that rule. In so holding the court interpreted the will as, in effect, providing that the fourteen-year trust period was to commence "at the expiration of such reasonable time after his decease as will suffice for the proper settlement of his estate", and stated that it was not to be presumed that such settlement would be delayed longer than that. To follow this reasoning in the instant case would be not only to read into the will something which is not there but to flatly disregard the provision of our statute which makes void any future interest which by any possibility may suspend the absolute power of alienation for a period longer than that prescribed.

In considering a problem similar to the one now before us the Supreme Court of Illinois in *Johnson* v. *Preston*, 226 Ill. 447 [80 N. E. 1001, 10 L. R. A. (N. S.) 564], said:

"It is clear, from the language of the will itself, that whatever interest the executor took under it could not vest in him until the probate of the will, and while this event would, in the ordinary and usual course of events, probably occur within a few months, or at most a few years, after the death of the testatrix, yet it cannot be said that it is a condition that must inevitably happen within 21 years from the death of the testatrix. Since a bare possibility that the condition upon which the estate is to vest may not happen within the prescribed limits is all that is necessary to bring the devise in conflict with the rule, we see no escape from

the conclusion that the devise to the executor offends the rule against perpetuities, and is therefore void."

That decision quoted from the case of *Husband* v. *Epling*, 81 Ill. 172 [25 Am. Rep. 273], as follows:

" 'The event here is: "When the estate of Thomas Mason is settled up". Can it be said to have been morally certain, when the instrument was executed, that the estate ever would be settled up? The law requires estates to be settled, and fixes a period within which it shall be done; but it does not, of and by itself, settle them. The presumption is that the law in this regard, as in others, will be obeyed. But this presumption does not amount to absolute certainty. The enforcement of the law, depending on human agencies, is liable to be affected or controlled by many circumstances, and in instances where it is not only not fully enforced, but is openly violated, are within the experience of all, so that it is impossible to predict with moral certainty that a thing will be done simply because it is the command of the law that it shall be.' "

Similar principles have been applied, although upon very different facts, in *People* v. *Simonson*, 126 N. Y. 299 [27 N. E. 380], and in *Cruikshank* v. *Chase et al.*, 113 N. Y. 337 [21 N. E. 64, 4 L. R. A. 140].

In *Estate of Troy*, 214 Cal. 53 [3 Pac. (2d) 930], the court said:

"It has frequently been stated that the provisions of section 716 of the Civil Code do not permit us to wait and see what happens in order to determine the validity or invalidity of the limitation. It is the possibility of the event that will suspend unlawfully the power of alienation which serves to void the limitation at the time of its creation."

The question before us narrows down to whether or not it can be said that this estate must of necessity have been distributed within twenty-five years after the testator's death and that such distribution could not "by any possibility" have been longer delayed. One possibility, which cannot be overlooked, is that probate proceedings might not have been started for many years. Cases are not unknown where parties, through ignorance or neglect, have continued to occupy and use for a long period property left by a decedent before resorting to probate. Property in the form

of bank deposits has remained unclaimed for years before probate proceedings were commenced. The closing of many estates has been delayed for years both through neglect and by intention, because of circumstances and conditions. A long delay by reason of protracted litigation is a very real possibility. All of these possibilities, not to mention others, might become realities in a particular case, causing a delay beyond the time limited. While it can be said that the reasonable probabilities were in favor of a distribution of this estate well within the time required, to hold that such a result, with the consequent vesting of interest, was certain to occur and would inevitably take place would be to disregard the statute by accepting a high degree of probability as a certainty.

While statutes of the kind here in question may at times seem unnecessarily harsh in a particular case, they are adopted with a definite aim and purpose in view. These particular statutes are a part of the expression of a well-defined public policy. In so far as material here the language therein used is not ambiguous and to interpret the phrase ''by any possibility'' as in effect meaning ''by any probability'' would be to alter a plain provision of the statute. Such a change in statutory law should come, if at all, from the legislature and not from the courts.

The judgment and decree is affirmed.

Marks, J., concurred.