[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISIONCT Page 16279 REGARDING MOTION FOR SUMMARY JUDGMENT
This action was commenced on July 20, 1998, by the plaintiff Lorenzo Jackson against the law firm of Furey, Donovan, Eddy, Kocsis, Tracy Daly, P.C. and attorney William J. Eddy. The plaintiff is seeking to recover an equal share of his minor daughter's estate in the amount of $84,304 plus interest, costs and damages for "mental anguish and pain."
The defendants have moved for summary judgment on all three counts of the plaintiff's Complaint. The issues raised by the motion are as follows:
I. Whether an attorney, who represents the fiduciary of an estate, owes a duty to all potential distributees or beneficiaries of that estate.
II. Whether the court should grant the defendants' motion for summary judgment as to the second count of the plaintiff's complaint on the ground that there are no genuine issues of material fact as to breach of contract.
III. Whether the court should grant the defendants' motion for summary judgment as to the third count of the plaintiff's Complaint on the ground that there are no genuine issues of material fact as to the allegations brought under CUTPA.
 FACTS
The events that give rise to the present action began on July 29, 1993, when the plaintiff's minor daughter, Jayza Lee Marin (decedent), died intestate. On September 2, 1993, Jayza Lee's mother, Tammy Marin (Marin), filed an application for the administration of her daughter's estate and to be named as fiduciary of the estate. On October 10, 1993, Marin was appointed administratrix and fiduciary of the decedent's estate.
On March 25, 1994, Marin filed a final accounting listing $168,607.39 as the total amount available for distribution. The court of probate approved the final accounting on May 5, 1994, and issued a decree authorizing the fiduciary to distribute the assets of the estate "pursuant to the schedule of proposed distribution . . . and according to the Statutes of the State of Connecticut covering intestate estates." On June 6, 1994, Marin filed an affidavit attesting that she distributed the estate to all entitled persons under law. The plaintiff alleges that he did not receive a portion of the assets to which he was allegedly CT Page 16280 entitled.
On August 17, 1994, the plaintiff appealed from probate court alleging that he is the father of the decedent and was therefore entitled to an equal share of her estate. On March 14, 1996, the plaintiff was adjudicated the legal father of the decedent by the probate court. The Superior Court of Waterbury upheld the plaintiff's appeal on July 29, 1996. In upholding the appeal, the court, McDonald, J., ordered that the case be returned to probate court to provide the plaintiff with the opportunity to present the new evidence regarding legal paternity. On October 20, 1997, the plaintiff filed a petition for distribution with the probate court in Waterbury seeking redistribution by the court in light of the plaintiff's legal status as father of the decedent and Judge McDonald's ruling.[1]
The plaintiff initiated the present action alleging, in three separate counts, negligence, breach of contract and violations of the Connecticut Unfair Trade Practices Act (CUTPA). On February 18, 2000, the defendants moved for summary judgment asserting that there are no genuine issues of material fact. The plaintiff filed an opposition to the motion on March 13, 2000 and the defendants subsequently filed a supplemental memorandum of law in reply on May 24, 2000.
 DISCUSSION
"The standard of review of a trial court's decision to grant summary judgment is well established. [W]e must decide whether the trial court erred in determining that there was no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The test is whether a party would be entitled to a directed verdict on the same facts. . . ." (Citations omitted; internal quotation marks omitted.) Sherwood v. Danbury Hospital, 252 Conn. 193, 201, 746 A.2d 730
(2000).
I. No duty existed prior to, or after, the date of the alleged wrong
"The defendants argue that they owed no duty to the plaintiff. The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant violated that duty in the particular situation at hand. . . ." (Internal quotation marks omitted.) Mendillo v. Board of Education, 246 Conn. 456,483, 717 A.2d 1177 (1998).
"As a general rule, attorneys are not liable to persons other than CT Page 16281 their clients for the negligent rendering of services." Krawczyk v.Stingle, 208 Conn. 239, 244, 543 A.2d 733 (1988). The court in Krawczyk
held that "[d]etermining when attorneys should be held liable to parties with whom they are not in privity is a question of public policy." Id., 245. "In addressing this issue, courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party." Id.
In Krawczyk, the court also acknowledged that "[a] number of jurisdictions have recognized an exception to the general rule [that an attorney is not liable to third persons] when the plaintiff can demonstrate that he or she was the intended or foreseeable beneficiary of the attorney's services." (Emphasis added.) Id., 244. In Stowe v. Smith,184 Conn. 194, 441 A.2d 81 (1981), for example, the court recognized a cause of action in contract by an intended third-party beneficiary against the attorney who negligently prepared a will. Id., 197. InMozzochi v. Beck, 204 Conn. 490, 529 A.2d 171 (1987), the court noted that a "named beneficiary of a will invalidated because of an attorney's faulty draftsmanship has been held to have a cause of action." Id., 500, citing Lucas v. Hamm, 56 Cal.2d 583, 588-91, 364 P.2d 685,15 Cal.Rptr. 821 (1961), cert. denied, 368 U.S. 987, 82 S.Ct. 603,7 L.Ed.2d 525 (1962).
Stowe and Mozzochi are distinguishable from the present action because it does not involve the drafting of estate documents or the expressed intent of the decedent to benefit a third party. The guidelines set forth in Krawczyk, therefore, must be reviewed in determining whether the plaintiff, as a third-party beneficiary, may recover from the defendants. As previously noted, under Krawczyk, whether "attorneys should be held liable to parties with whom they are not in privity is a question of public policy." Krawczyk v. Stingle, supra, 208 Conn. 245. "[C]ourts have [thus] looked principally to whether the primary or direct purpose of the transaction was to benefit the third party." Id.
"Additional factors considered have included the foreseeability of harm, the proximity of the injury to the conduct complained of, the policy of preventing future harm and the burden on the legal profession that would result from the imposition of liability." Id., 245-46. Finally, the court must also consider whether the imposition of liability is proper where "such liability [has] the potential of interfering with the ethical obligations owed by an attorney to his or her client." Id., 246.
The first factor is whether "the primary or direct purpose of the [defendants'] transaction was to benefit the [plaintiff]." Krawczyk v.Stingle, supra, 208 Conn. 245. In his affidavit, the defendant Eddy CT Page 16282 attests that he represented Marin "as administratrix of the Estate of [the decedent]." (Eddy Affidavit, ¶ 3.) Eddy further attests that neither he, "nor [his] firm, has at any time entered into a contract, agreement, obligation, retainer, or arrangement, either written or verbal, with [the plaintiff]." (Eddy Affidavit, ¶ 13.) It should also be noted that the plaintiff's status as father of the decedent had not even been legally established at the time of distribution. Based on all of the foregoing, the court finds that the defendants' primary purpose
was to represent the administratix of the decedent's estate and not to directly benefit the plaintiff.
Another factor set out in Krawczyk, is the consideration of the foreseeability of harm to the plaintiff. In situations where an attorney negligently drafts a will, any harm to an intended beneficiary of the testator is foreseeable. For example, in Stowe v. Smith, supra,184 Conn. 199, the court concluded that liability was appropriate where the attorney and client entered into an agreement to draft and execute a will with the intent to directly benefit a third party and such attorney negligently failed to abide by such intent.
In his affidavit, Eddy states that on March 25 and April 14 of 1994, "[his] firm sent correspondence to the Court of Probate advising the court of [the plaintiff's] status and enclosing a copy of the State of Connecticut's Request to Withdraw Paternity Petition and birth certificate of [the decedent]."[2] (Eddy Affidavit, ¶ 6.) Because the plaintiff's legal status as father of the decedent had not been established at the time of probate, the plaintiff was not an intended or foreseeable beneficiary. Thus, any harm sustained by the plaintiff was unforeseeable.[3]
Our courts have yet to address the narrow issue of whether an attorney, who represents the fiduciary of an estate, remains liable to all potential distributees of that estate. Authority from other jurisdictions, however, lends this court with some insight on the issue. "`When an attorney is employed to render services . . . in settling the estate, he acts as attorney of the executor [or administrator], and not of the estate, and for his services the executor [or administrator] is personally responsible.'" 4 R. Mallen J. Smith, Legal Malpractice § 31.4, p. 86 (4th Ed. 1996), quoting In re Oqier's Estate, 101 Cal. 381,383, 35 P. 900 (1894). "[T]he purpose of the attorney's retention is to benefit the estate, not the beneficiaries or others." 4 R. Mallen J. Smith, supra, § 31.4, p. 86, citing Jewish Hospital of St. Louis v.Boatmen's National Bank of Belleville, 261 Ill. App.3d 750,199 Ill. Dec. 276,633 N.E.2d 1267, appeal denied, 157 Ill.2d 503, 642 N.E.2d 1282,205 Ill. Dec. 165 (1994). In the state of Washington, for example, it has been held that a beneficiary "is only an incidental beneficiary of the CT Page 16283 attorney's services, whose client is the personal representative." 4 R. Mallen J. Smith, supra, § 31.4, p. 87, citing Trask v. Butler,123 Wash.2d 835, 872 P.2d 1080 (1994).
In light of the foregoing, the court finds that the defendants had no duty to the plaintiff. Therefore, the defendants' motion for summary judgment as to the first count is granted.[4]
II. An implied contract did not exist between the parties so as to renderthe second count of the complaint valid
In his complaint, the plaintiff alleges that the defendants "promised expressly and/or implicitly to provide legal services for the express benefit of the estate and its distributees and rightful beneficiaries." (Complaint, ¶ 13.) In their motion for summary judgment, the defendants argue that the second count is merely a legal malpractice action disguised as a breach of contract claim, and therefore, is barred by the three-year statute of limitations pursuant to General Statute § 52-577.
In the past, our Supreme Court has allowed plaintiff's to initiate actions against attorneys in both tort and contract where each claim is "clearly alleged" in separate counts. See Westport Bank Trust Co. v.Corcoran, Mallin and Aresco, 221 Conn. 490, 494 n. 5, 605 A.2d 862 (1992) (deciding the merits of the case based on the "actual language of the pleadings" where the complaint "clearly [alleges], in count one, a breach of a direct attorney-client contract and, in count three, the tort of legal malpractice by an attorney with respect to his client"). Similarly, in Stowe v. Smith, 184 Conn. 194, 441 A.2d 81 (1981), a case involving claims of legal malpractice and breach of contract against a defendant attorney, the court held that "[u]nless a particular conflict between the rules of contract and tort requires otherwise, a plaintiff may choose to proceed in contract, tort, or both." Id., 199; but seeShuster v. Buckley, 5 Conn. App. 473, 478, 500 A.2d 240 (1985) ("[w]here the plaintiff alleges that the defendant negligently performed legal services and failed to use due diligence the complaint sounds in negligence, even though he also alleges that he retained him or engaged his services"). In Mac's Car City, Inc. v. DeNigris, 18 Conn. App. 525,559 A.2d 712, cert. denied, 212 Conn. 807, 563 A.2d 1356 (1989), the appellate court distinguished Shuster and permitted claims against an attorney in both tort and contract stating that in Shuster the "complaint in question was couched in the language of tort rather than contract."Mac's Car City, Inc. v. DeNigris, supra, 18 Conn. App. 530.
In Mayer v. Gammill, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 342234 (January 21, 1999, Nadeau, J.) CT Page 16284 (23 Conn.L.Rptr. 686), the court held that where a plaintiff brings "separate claims sounding in breach of contract," in addition to those sounding in legal malpractice, the contract claim is proper. Id., 687. The Mayer court distinguished itself fromShuster because Shuster involved only one count alleging both legal malpractice and breach of contract, while inMayer the legal malpractice and breach of contract claims were set out separately.
Accordingly, actions brought by individuals against attorneys in both tort and contract are proper where each claim is alleged separately and distinctly. The plaintiff in this case asserts his allegations of legal malpractice, breach of contract and CUTPA in three separate counts.
Because the plaintiff has properly alleged the breach of contract claim in a separate count, and alleged that an express or implied contract existed between the parties, the court must determine whether the defendants have satisfied their burden of proving that there is no genuine issue of material fact as to whether a contract existed between the parties.
In his affidavit dated February 8, 2000, the defendant Eddy states that neither he, "nor [his] firm, has at any time entered into a contract, agreement, obligation, retainer, or arrangement, either written or verbal, with [the plaintiff]." (Eddy Affidavit, ¶ 13.) Eddy additionally states that neither he, "nor [his] firm, has at any time been requested or retained to provide legal services, advice, or opinions to or for the benefit of [the plaintiff]." (Eddy Affidavit, ¶ 14.)
In his objection to the defendants' motion, the plaintiff offers no evidence that an express or implied contract existed between the parties, such as affidavits or written documents, but relies instead on the premise that privity exists because the defendants represented the decedent's estate and therefore represented all intended beneficiaries of the estate. The plaintiff fails, however, to provide any legal authority or evidence in support of this assertion.
Because there are no genuine issues of material fact as to the existence of an express contract, the court must address whether there is sufficient evidence that genuine issues of material fact exist as to an implied contract. "[A] claim of breach of an implied contract could be read to allege failure to perform duties imposed either by a contract implied in fact or a contract implied in law. . . . A contract implied in fact, like an express contract, depends on actual agreement . . . [and a] contract implied in law requires, as a foundation, that there be an obligation created by law that imposes a duty to perform." (Citation omitted; internal quotation marks omitted.) Chotkowski v. State, CT Page 16285240 Conn. 246, 268 n. 26, 690 A.2d 368 (1997). Accordingly, in order to state a cause of action for breach of an implied contract, the plaintiff must allege "that the [defendant] agreed, either by words or action or conduct, to undertake any form of actual contractual commitment to the plaintiff." (Internal quotation marks omitted.) D'Ulisse-Cupo v. Board ofDirectors of Notre Dame High School, 202 Conn. 206, 211 n. 2, 520 A.2d 217
(1987).
The plaintiff has failed to produce any evidence that the defendants displayed conduct or specifically agreed to perform legal services or represent the plaintiff in any way. Furthermore, the plaintiff has failed to provide evidence controverting the evidence provided by the defendants demonstrating that no contract or agreement existed between the parties. Accordingly, there are no genuine issues of material fact as to whether a contract, implied or express, existed between the parties and summary judgment is granted on count two.
III. The plaintiff does not have a cause of action under the ConnecticutUnfair Trade Practices Act (CUTPA)
As the final ground for their motion for summary judgment, the defendants contend that the plaintiff's third count is invalid because the plaintiff may not recover under CUTPA. In rebuttal, the plaintiff argues, without citing legal authority, that a CUTPA claim may be brought where the defendants' wrongful conduct involves the operation of a law firm business.
Generally, "there is no CUTPA violation when the sole basis of the claim is the defendant's negligence and the jury determines that the plaintiff was contributorily negligent." (Internal quotation marks omitted.) Haynes v. Yale-New Haven Hospital, 243 Conn. 17, 34, 699 A.2d 964
(1997). "[V]iolations predicated on negligence or malpractice, whether legal or medical, are not covered [by CUTPA] because those claims address only competence." Sherwood v. Danbury Hospital, supra, 252 Conn. 213. "[O]nly the entrepreneurial aspects of the practice of law are covered by CUTPA." (Internal quotation marks omitted.) Beverly Hills Concepts, Inc.v. Schatz and Schatz, 247 Conn. 48, 79, 717 A.2d 724 (1998). "The noncommercial aspects of lawyering — that is the representation of the client in a legal capacity — should be excluded for public policy reasons." Haynes v. Yale-New Haven Hospital, supra, 35.
In his complaint, the plaintiff fails to allege that the defendants' wrongful conduct consisted of acts involving the commercial or entrepreneurial aspects of the practice of law. His allegations are instead predicated upon claims of legal malpractice and breach of contract, both of which do not constitute the commercial or CT Page 16286 entrepreneurial aspects of the practice of law.
The plaintiff has failed to properly allege a cause of action under CUTPA and the defendants' motion for summary judgment on the third count of the plaintiff's complaint is therefore granted.
 CONCLUSION
In light of the foregoing, defendants' motion for summary judgment is granted as to all three counts of the plaintiff's complaint.