[No. F056973. Fifth Dist. July 22, 2009.]

BAKER MANOCK & JENSEN, Petitioner, v.
THE SUPERIOR COURT OF FRESNO COUNTY, Respondent;
MARVIN R. SALWASSER, as Administrator, etc., Real Party in Interest.

## COUNSEL

Robie & Matthai, Edith R. Matthai and Steven S. Fleischman for Petitioner.

No appearance for Respondent.

Chielpegian Law Offices, Elliott D. Chielpegian, Michael S. Chielpegian and Lee S. W. Cobb for Real Party in Interest.

## Opinion

**VARTABEDIAN, Acting P. J.**—This is a petition seeking relief by writ of mandate after respondent court entered an order disqualifying petitioner Baker Manock & Jensen (hereafter the law firm) from serving as attorneys for any party in the probate action pending before respondent. We will grant the petition and direct respondent to vacate the orders in question.[1]

### Facts and Procedural History

The law firm drafted a will duly executed by Lillian Salwasser in 1999. Lillian died on September 24, 2006, and the will was admitted to probate. (Because many of the persons relevant to this proceeding are members of the Salwasser family, we will refer to those persons by their given names for clarity and convenience.) Two of Lillian's four sons, George and Gary, were named in the will as co-executors of the will. George and Gary were duly appointed executors and were issued letters testamentary with full authority to administer the estate under the Independent Administration of Estates Act (Prob. Code, § 10400 et seq.).

George was represented by the law firm. Gary was represented by separate counsel, Michael L. Farley.

Lillian's will left certain property to her husband, Walter, and left the remainder of her estate to a trust created at the same time she executed the will. George and Gary were named successor trustees of the trust; they and their families were the sole beneficiaries of the trust. Lillian's other two sons, Denis and Marvin Salwasser, were omitted from the will and the trust.

Soon after the proceeding for probate of Lillian's will was filed, Walter died. His will was admitted to probate and Denis was appointed executor. After serving as executor for about six months, Denis also died. Marvin, real party in interest in the present proceeding, was appointed administrator of Walter's estate.

At the time of her death, Lillian had an interest in 22 bank, brokerage, and investment accounts. One of these accounts stood in her name, one in Walter's name, and the other 20 were in various forms of joint ownership with

---

[1] The parties' motions for judicial notice filed on February 5 and 20, 2009, are hereby granted.

Walter. In addition, there were issues concerning real property transferred by Lillian to the trust during her lifetime and issues concerning ownership of certain improvements to real estate.

Lillian's will has a no contest clause. That clause provides: "If any beneficiary under this Will in any manner, directly or indirectly, contests this Will or any of its provisions in any legal proceeding that is designed to thwart my wishes as expressed in this Will, any share or interest in my estate given to that contesting beneficiary under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary had predeceased me without issue."

In order to begin to seek resolution of the questions concerning ownership of the accounts, the real property, and the improvements, George and Gary filed separate applications under Probate Code section 21320.[2] These applications sought a declaration that proposed petitions to determine these questions of ownership would not violate the no contest clause of the will. The court granted the applications, finding that the proposed petitions would not violate the no contest clause of the will.

Subsequently, Marvin, as Walter's executor, filed an application for a determination that petitions he proposed to file would not violate the no contest clause of Lillian's will. The first proposed petition sought a determination of entitlement to distribution of assets of Lillian's estate.[3] It claimed Lillian's will gave her share of all community property to Walter.[4] In addition, the petition sought a declaration that Marvin was entitled to modify Walter's retirement plan to confirm to Walter all of Lillian's interest in any such plan.

The second petition Marvin proposed to file was under Probate Code section 850. Acting on such a petition, the court can order property transferred to or from the administrator of an estate. (See Prob. Code, § 856.) The proposed

---

[2] Probate Code section 21320, subdivision (a), provides: "If an instrument containing a no contest clause is or has become irrevocable, a beneficiary may apply to the court for a determination of whether a particular motion, petition, or other act by the beneficiary . . . would be a contest within the terms of the no contest clause."

[3] Probate Code section 11700 provides: "At any time after letters are first issued to a general personal representative and before an order for final distribution is made, the personal representative, or any person claiming to be a beneficiary or otherwise entitled to distribution of a share of the estate, may file a petition for a court determination of the persons entitled to distribution of the decedent's estate. The petition shall include a statement of the basis for the petitioner's claim."

[4] The will stated: "I intend to dispose of all property that I may be authorized to pass by testamentary disposition. I confirm one-half (1/2) of the community property of my husband and myself to my spouse."

petition sought possession of all bank accounts to which Walter and Lillian had joint title and Walter's half of any community property in certain other accounts and assets. Thus, this proposed petition sought a determination that these assets did not belong to the estate at all. The proposed petition stated that the administrators of Lillian's estate were claiming all such property as part of the estate.

George, through the law firm and as a beneficiary of Lillian's will, filed an opposition to Marvin's application. The opposition contended both of Marvin's proposed petitions would constitute a contest of Lillian's will under the terms of the no contest clause.[5]

In response to this opposition, Marvin filed a petition to disqualify the law firm from representing George in his individual capacity as a beneficiary under Lillian's will. Marvin contended the law firm's representation of George in opposing Marvin's application for no contest declarations "creates actual conflicts of interest that warrant and mandate disqualification." Marvin contended the law firm, as attorney for George as executor of Lillian's estate, "is prohibited from concurrently representing George Salwasser in a matter that is adverse to a beneficiary under Lillian's Will." Marvin also contended the law firm's representation of George as an individual "is directly adverse to [the law firm's] prior representation of [Lillian] in the preparation of her estate plan and the testamentary and non-testamentary disposition of all of [her] assets. Such adverse representation is a breach of [the law firm's] duty of loyalty and confidentiality owed to" Lillian. George filed an opposition to the petition for disqualification.

After a hearing, the court entered an order granting Marvin's petition and, on its own motion, further disqualifying the law firm from representing George as executor of the will. In addition, on its own motion, the court issued an order to show cause why George should not be relieved as executor. After further proceedings, the court entered the amended order that is the

---

[5] This opposition is characterized by the trial court as "aggressive" litigation in which George is "seeking his father's disinheritance if his estate merely asks for . . . a determination" of ownership of the assets. The court explained: "If George is successful [in opposing Marvin's requests to have his questions be deemed not a contest of the will], and the outcome of [Marvin's] questions is unfavorable to [Marvin], Walter (and his estate) would be disinherited. George would benefit personally from such a result, as Walter would lose his status as a beneficiary of Lillian's estate in favor of George and Gary." This is simply incorrect and ignores the very purpose of Probate Code section 21320, which is to permit such a determination without the risk of disinheritance. If George's opposition were to prevail, at worst Marvin, like George, would simply inherit in accordance with the terms of the will as those might be declared by the probate court.

subject of the present petition for writ of mandate. The amended order further clarified that the court intended to disqualify the law firm from representing any person in any capacity in the matter of the probate of Lillian's estate.

The law firm filed its petition for writ of mandate. After receiving Marvin's response, this court issued an order to show cause why the relief sought should not be granted.

## Discussion

We review for abuse of discretion a trial court's determination to remove counsel. However, where that exercise of discretion is based on a legal error, the trial court's order is not entitled to deference. That is the case here: the trial court found that the circumstances presented to it constituted a conflict of interest; those circumstances did not constitute a conflict of interest, and the trial court's action based on its erroneous conclusion must be vacated. (See generally *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 393–394 [33 Cal.Rptr.3d 644].)

The trial court concluded the law firm had a conflict of interest. The court reasoned as follows: Because it had represented Lillian in the drafting of her will, the law firm had a "duty of loyalty" to Lillian. Because it drafted the will, the law firm had a "duty of care" to the beneficiaries of the will. Because it represented the executor, the law firm was not permitted to " 'represent a beneficiary of an estate in a controversy with other beneficiaries except in those unusual cases where each of the parties expressly consents in writing and the attorney is not professionally hampered by the conflict problem.' *Estate of Effron* (19[81]) 117 Cal.App.3d 915, 929 [173 Cal.Rptr. 93]."

The trial court concluded, "However, [the law firm] has now undertaken to represent one of Lillian's three beneficiaries against another one of Lillian's three beneficiaries with regard to the very estate plan [it] drafted and for which [it] acted as attorney to the estate fiduciary. The representation of George as an individual in his personal dispute with [Marvin] placed the [law] firm in an active and acute conflict of interest."

 We disagree with this line of reasoning in several respects. First, the trial court implied there was an attorney-client relationship between the law firm and Marvin as a result of the former having drafted Lillian's will. This is

incorrect. While an attorney under some limited circumstances may have liability to an intended beneficiary of a will who, because of the attorney's error, does not receive the bequest intended by the testator (see *Lucas v. Hamm* (1961) 56 Cal.2d 583, 588–589 [15 Cal.Rptr. 821, 364 P.2d 685]), there is no allegation in the present case—or, at least, at this stage of the present case—that the will drafted by the law firm failed to make valid bequests as contemplated by the testator.

Further, the liability just described does not arise from the will drafter's status as an attorney but, instead, as a result of negligent performance of a contract. In other words, the liability discussed in *Lucas v. Hamm, supra*, 56 Cal.2d at page 588, was exactly the same as the liability imposed on a nonattorney who had undertaken to draft a will, or a bank that negligently failed to pay its customer's life insurance premium to the detriment of the beneficiaries named in the policy. (*Lucas v. Hamm, supra*, 56 Cal.2d at pp. 588, 590.)

Accordingly, the potential for negligence liability—a contingency that may never arise in a particular case and certainly is not yet implicated in the present case—in no way corresponds to or implicates the duties of confidentiality and loyalty that are present in any instance of an attorney-client relationship; those attorney-client duties are present whether the attorney has been negligent or has performed to perfection. (See Bus. & Prof. Code, § 6068.) Therefore it is incorrect to conclude that potential negligence liability somehow brings into the attorney-client relationship those who are merely third-party beneficiaries of the contract to draft a will.

Next, the trial court reasoned that an attorney who represents the executor is not permitted to represent a beneficiary "in a controversy with other beneficiaries" unless consent is given by all beneficiaries. This conclusion by the trial court is based on dicta in *Estate of Effron, supra*, 117 Cal.App.3d at page 929 (*Effron*).[6]

In *Effron*, beneficiaries of an estate sought to remove *the executor* of the estate, a bank, because the bank refused to attempt to negotiate fees below the approved court schedule for the attorneys representing the bank as executor. The beneficiaries alleged the executor had a fiduciary duty to preserve the assets of the estate and that meant, according to the beneficiaries, getting the best price for legal services. (*Effron, supra*, 117 Cal.App.3d at p. 928.)

---

[6] Real party in interest is correct that a court's reasoning may be informed by dicta in earlier cases. Nevertheless, reliance on dicta requires care because, by its very nature, dicta is neither addressed to the specifics of a case before a court nor is the court's reasoning played out against concrete factual applications.

In the course of explaining that beneficiaries had no right to dictate to the executor which attorney the executor should hire, the court stated such attorney "may not represent a beneficiary of an estate in a controversy with other beneficiaries." (*Effron, supra,* 117 Cal.App.3d at p. 929.) The court then stated: "Seen in this light, the flaws of Beneficiaries' argument become apparent. Their rule would give two persons—a client [the executor] and a nonclient [the beneficiary]—the absolute right to discharge the executor's lawyer under any circumstances, creating a confusing exception to the law of tortious interference with business relationships." (*Ibid.*) Thus, it appears the court's use of the phrase "represent a beneficiary . . . in a controversy with other beneficiaries" was meant to convey that the attorney could not represent a beneficiary against "all the other beneficiaries," with that latter phrase taken as synonymous with "the overall interest of the estate."

██ This conclusion is reinforced by reference to the authority cited by the *Effron* court for its dicta, namely, Annotation, Estate—Attorney Representing Heirs (1956) 47 A.L.R.2d 1104. That annotation states the commonsense rule that the attorney for the estate is not permitted to represent a beneficiary in an action against the estate or against the interest of the estate. (*Id.* at p. 1105.)

Thus, we conclude an attorney who has drafted a will is not bound toward a beneficiary of the will by the duties of an attorney to his or her client: the beneficiary is not the attorney's client and does not become a successor client just because the will becomes irrevocable at the testator's death. (See *Goldberg v. Frye* (1990) 217 Cal.App.3d 1258, 1268–1269 [266 Cal.Rptr. 483].)[7] *Effron* clearly recognizes this when it describes the beneficiary as "a nonclient" of the executor's attorney. (*Effron, supra,* 117 Cal.App.3d at p. 929.) Further, we conclude the attorney for the executor does not have a conflict of interest merely because he or she represents one beneficiary of a will in a dispute with another beneficiary, unless such representation presents a conflict between two clients of the attorney, namely, the executor and the represented beneficiary.

---

[7] The trial court's citation to and characterization of the *Goldberg* case is puzzling. The trial court stated: "The Court in *Goldberg* found that an executor breached his fiduciary duty when he entered into an agreement which favored one beneficiary over another." This may be so, with appropriate caveats for the procedural posture of the case. (See *Goldberg v. Frye, supra,* 217 Cal.App.3d at pp. 1263–1264 & fn. 1.) With respect to the *attorney* for the executor, also sued for negligence by the heirs, the court stated: "[Retention of an attorney by the executor in an ordinary probate case] constitutes the counselor the attorney for the fiduciary, and not the attorney for the estate, its beneficiaries, its creditors or others who may be interested therein. [¶] . . . [¶] . . . The beneficiaries are entitled to evenhanded and fair administration by the fiduciary. They are not owed a duty directly by the fiduciary's attorney." (*Id.* at pp. 1268–1269.)

■ Nor do we agree with the trial court's reliance on Probate Code section 8402 for the proposition that a "conflict of interest between beneficiaries is a ground for removal of a personal representative." The issue under Probate Code section 8402, as relevant here, is whether a person named in a will as executor must still be *appointed* even if that person has a conflict of interest that would justify *removal* as executor. The 1990 modification to Probate Code section 8402, relied upon by the trial court, reverses the result in cases such as *Estate of Backer* (1985) 164 Cal.App.3d 1159 [211 Cal.Rptr. 163], holding that an initial conflict of interest does not preclude appointment as executor. However, even under *Backer,* "[i]f, following appointment, the executor advances his self-interest at the expense of the estate, the court then has the power to remove him." (*Id.* at p. 1163.) Probate Code section 8402 did not add new grounds for disqualifying an executor named in a will; rather, it permitted a challenge to the executor at an earlier point in the litigation. Whenever the claim is asserted, the underlying issue for conflict of interest purposes is whether the executor has sought to advance his or her self-interest "at the expense of the estate." (*Estate of Backer, supra,* at p. 1163.) The issue is not whether a person, whether that person is the executor, a beneficiary, or both, in good faith contests a claim against the estate made by another person, whether a beneficiary or a stranger to the estate.

The trial court noted that the executor of the will has an interest in defeating Marvin's ultimate claim that the accounts are true joint accounts with right of survivorship, since the result of that finding would be a significant reduction of the estate. As such (though the trial court does not note this), George, as executor, is a proper objector to Marvin's application insofar as it seeks permission for a petition to remove these accounts from the estate. "A primary duty of the executor is to take reasonable steps to preserve the assets of the estate." (*Estate of Beach* (1975) 15 Cal.3d 623, 639 [125 Cal.Rptr. 570, 542 P.2d 994]; see generally *Estate of Goulet* (1995) 10 Cal.4th 1074, 1081–1084 [43 Cal.Rptr.2d 111, 898 P.2d 425].) Accordingly, where the executor has a good faith belief that a contestant (whether a beneficiary or a stranger to the will) seeks to deprive the estate of assets rightfully belonging to the estate, it cannot be a conflict of interest for the executor's attorney merely to represent the executor in the discharge of the executor's duty to preserve the estate. (*Estate of Beach,* at p. 1082.)

■ Conversely, as the trial court also notes, the executor has no marshaling-of-assets stake in the subject matter of Marvin's second proposed petition, which seeks an interpretation of language within the will—language which may determine which of the will's beneficiaries receive Lillian's share of the community bank accounts and assets. The estate would be neither

enhanced nor diminished by any ruling on this, the second of Marvin's proposed petitions. Nevertheless, the executor has a duty to assist the court in ascertaining the persons who are justly entitled to receive the estate. The executor is entitled to advocate in the trial court for an interpretation of the will that preserves and implements the testator's intent, even when a contrary interpretation is asserted by a beneficiary. (See *Estate of Goulet, supra*, 10 Cal.4th 1081–1082; *id.* at p. 1100 (dis. opn. of Kennard, J.).)

In the present case, Marvin's proposed construction of the community property language of the will conflicts with the construction of that language asserted by the executor. Obviously, we would be confronted with a different case if the law firm sought to represent *Marvin's* point of view while continuing to represent the executor's conflicting point of view. No one would deny the firm had a conflict of interest if it attempted to represent clients on two sides of an issue in the same litigation.

That is not the present case, however. As Marvin's proposed petition states, the executor has asserted his disagreement with Marvin's interpretation of the relevant language in the will. The executor's assertion of Lillian's intent, that her share of community property pass to her residual trust, is the same assertion made by George as a beneficiary of that trust. Thus, even if the law firm were viewed as representing "two Georges" who, at least in theory, could have conflicting interests (in our example, if the law firm as attorney for the executor *agreed* with Marvin's interpretation of the will), in the case before us there is no divergence of the interests of George as executor and George as beneficiary. Accordingly, there is no conflict of interest in representing both the executor and the beneficiary.

The trial court cites a number of treatises for the general proposition that conflicts of interest can arise in numerous contexts in the estate planning and probate field. As these authorities note, there are often close and overlapping interconnections between the testator, the executor, beneficiaries, and omitted heirs, and some or all of these persons may have used the services of the same lawyer at various times. The hypothetical possibility of conflicts of interest, however, cannot result in disqualification of a lawyer where there is neither an actual or apparent conflict of interest. The trial court erred in disqualifying the law firm from representing George as an individual. Further, the present record discloses no conflict of interest arising from the law firm's role as attorney for the executor. Accordingly, the law firm was not subject to disqualification from continuing to represent the executor.

## Disposition

Let a writ of mandate issue directing respondent to vacate its orders of December 12, 2008, and December 15, 2008, and further directing respondent court to enter an order denying Marvin Salwasser's petition for order disqualifying Craig A. Houghton and Baker Manock & Jensen from representing George Salwasser in this probate proceeding. Petitioner is awarded costs of this proceeding from real party in interest.

Hill, J., and Kane, J., concurred.