**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARMELO GALEA, | No. 15-56468 |
| Plaintiff-Appellant, | D.C. No. 3:11-cv-01218-CAB |
| and | |
| ANTHONY W. IMBIMBO, Trustee of the Carmelo Galea Family Insurance Trust, | MEMORANDUM[*] |
| Plaintiff, | |
| v. | |
| STEVEN BURGESS, individually; THE BURGESS GROUP, | |
| Defendants-Appellees, | |
| and | |
| LINCOLN NATIONAL CORPORATION; THE LINCOLN NATIONAL LIFE INSURANCE COMPANY, INC., | |
| Defendants. | |

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Appeal from the United States District Court
for the Southern District of California
Cathy Ann Bencivengo, District Judge, Presiding

Argued and Submitted March 9, 2017
Pasadena, California

Before: PAEZ, BERZON, and CHRISTEN, Circuit Judges.

In this diversity-based action, Carmelo Galea appeals the district court's grant of summary judgment to defendant Steven Burgess on his California state law claims alleging fraud and deceit and professional negligence. We affirm.

1.      The district court did not err in granting summary judgment to Burgess on Galea's claim for fraud and deceit. Under California law, the tort of deceit or fraud requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Charpentier v. Los Angeles Rams Football Co., Inc.*, 75 Cal. App. 4th 301, 312 (1999) (citation omitted).

Galea alleges that in 2008, he obtained three life insurance policies from Lincoln National Life Insurance Company with a combined value of $25 million. Galea further alleges that he sought a non-recourse loan to finance the payments, and that Lincoln National's representatives enlisted Burgess to obtain such a loan.

2

Although Burgess allegedly promised those representatives that the loan would indeed be non-recourse, the loan Burgess ultimately secured held Galea personally liable. But Galea signed a personal guaranty agreement. He maintains that he did not know that he would be personally liable on the loan, and that had he been apprised of the terms of the loan he would never have agreed to it.

There is a genuine dispute of material fact as to whether Burgess ever represented that he would obtain a non-recourse loan. Moreover, as the district court observed, "[e]xcept in the rare case where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact." *Blankenheim v. E.F. Hutton & Co.*, 217 Cal. App. 3d 1463, 1475 (1990).

We agree with the district court, however, that this is such a rare case. Whatever representations Burgess may have made to Lincoln promising that he would obtain a non-recourse loan, we cannot conclude that a reasonable juror could find that Galea *justifiably* relied on them. Galea examined the personal guaranty himself, which declared in capital letters on the front page of the document that it was a "GUARANTY AGREEMENT." The agreement was a relatively short eight-page document which identified Galea as the guarantor on the first page, as well as on the final page where Galea affixed his signature. Galea

3

apparently recognized the nature of the guaranty agreement, as he asked his accountant whether the document was a personal guaranty. In fact, Galea declared that his understanding was that he *would* be personally liable for repayment of the loan if he cancelled the life insurance policy, which is essentially what happened when he failed to renew it and the policy lapsed. Given these facts, the district court did not err in concluding that any reliance by Galea on Burgess's alleged representations to others was not justifiable as a matter of law.

2. The district court did not err in granting summary judgment to Burgess on Galea's negligence claim. In the first place, Galea has failed to demonstrate that Burgess owed him a professional duty of care, particularly since Burgess was not in privity with Galea. Galea correctly observes that California courts have, in some instances, recognized that a professional may owe a duty of care to a third party with whom he or she is not in privity. *See Biakanja v. Irving*, 49 Cal. 2d 647, 650-51 (1958). The bulk of the cases on which Galea relies concerned an *attorney's* potential professional liability to third parties not in privity. *See, e.g., Lucas v. Hamm*, 56 Cal. 2d 583 (1961). A few cases, however, have held that other professionals *may* owe a similar duty in some circumstances. *See, e.g., Goonewardene v. ADP, LLC*, 5 Cal. App. 5th 154, 181 (2016), *as modified on denial of reh'g* (Nov. 29, 2016) (holding that "a financial services

4

provider may be subject to a duty of care to a third party beneficiary of the contract between the provider and its client.").

But Galea does not, in his Second Amended Complaint, suggest in *what* professional capacity Burgess was acting, aside from observing generally that Burgess presented himself as a "specialist and expert in the field of life insurance premium financing." It is not alleged, for example, that Burgess was acting as an attorney, or as a financial advisor. Although Galea observes that Burgess is registered as an insurance agent, and proposes that his conduct fell below the standard of care for a life insurance agent, he was not acting as *Galea's* insurance agent (or anyone else's) at any point in the transaction. In fact, Galea obtained the relevant life insurance policies before anyone at Lincoln contacted Burgess. Burgess's role in this particular drama was limited to brokering the loan, not the underlying insurance. Without some indication of the professional capacity in which Burgess was acting, we cannot conclude that he owed a professional duty of care to a third party such as Galea.

**AFFIRMED.**