McKEIG, Justice.
This case arises out of a district court order granting a motion for judgment on the pleadings. Respondent/cross-appellant Security Bank & Trust Company ("Security Bank") sued appellant/cross-respondent Larkin, Hoffman, Daly & Lindgren, Ltd. ("Larkin"), alleging legal malpractice related to estate-planning services for deceased client Gordon P. Savoie. Security Bank, as trustee and personal representative of Savoie's estate, alleged that Larkin failed to advise Savoie that his estate would be subject to a substantial generation-skipping transfer tax upon a distribution to a beneficiary who was more than 37.5 years younger than him. The district court granted Larkin's motion for judgment on the pleadings because it determined that Security Bank lacked standing both in its capacity as personal representative of Savoie's estate and in its capacity as trustee of the Gordon P. Savoie Revocable Trust. The court of appeals reversed and remanded, concluding that Security Bank had standing as personal representative of the estate because a cause of action for legal malpractice accrued to Savoie during his lifetime, and thus survived to Security Bank. Because we agree with the district court, we reverse the court of appeals.
FACTS
Larkin drafted a will and revocable trust agreement for Gordon P. Savoie in 2009. Following a number of specific bequests, Article 7 of the trust agreement directed that 45 percent of the remaining trust assets be distributed to a beneficiary who was more than 37.5 years younger than Savoie. As a result, the distribution was subject to a generation-skipping transfer tax totaling about $1.654 million. See 26 U.S.C. §§ 2601 - 03, 2611, 2651(d) (2012).
Following Savoie's death, Security Bank was appointed trustee and personal representative of Savoie's estate. In these capacities, Security Bank sued Larkin for legal malpractice. Security Bank alleged that Larkin never advised Savoie of the generation-skipping transfer tax, nor discussed *495 with him options for reducing the tax burden to the estate.
Larkin moved for judgment on the pleadings under Minn. R. Civ. P. 12.03. Larkin argued that Security Bank lacked standing as personal representative of Savoie's estate to bring an action for legal malpractice because no cause of action accrued during Savoie's lifetime. Larkin also argued that Security Bank lacked standing as trustee of the Gordon P. Savoie Revocable Trust because Larkin had no attorney-client relationship with Security Bank in that capacity.
The district court granted Larkin's motion. The court applied the "some damage" rule of accrual discussed in Antone v. Mirviss , 720 N.W.2d 331 (Minn. 2006). The court determined that "some damage" did not occur until after Savoie's death, at the point when the estate became liable for the generation-skipping tax. Thus, as no cause of action accrued during Savoie's lifetime, no cause of action survived to Security Bank as personal representative. Further, the court held that Security Bank did not have standing as trustee because it did not have an attorney-client relationship with Larkin, and was not a direct and intended beneficiary of Larkin's relationship with Savoie.
In a published decision, the court of appeals reversed. Security Bank & Trust Co. v. Larkin, Hoffman, Daly & Lindgren, Ltd. , 897 N.W.2d 821, 828 (Minn. App. 2017). The court agreed with the district court that, for a claim of legal malpractice to survive to a client's personal representative after death, the cause of action must accrue during the client's life. Id. at 824-25 (citing Minn. Stat. § 524.3-703(c) (2016) ). The court interpreted Antone 's requirement of "some damage" to include "reliance" on an attorney's allegedly negligent advice. Id. at 825-27. Accordingly, the court concluded that "some damage" occurred when Savoie executed the will and trust because he relied on the allegedly negligent advice of the attorneys "to the detriment of [his] legal rights." Id. at 826-27. Therefore, the court held, the cause of action accrued to Savoie before his death, and Security Bank had standing to pursue the claim on behalf of the estate as personal representative. Id. at 827. Because the court determined that Security Bank had standing as personal representative, the court did not address whether Security Bank had standing as trustee. Id. at 828.
We granted Larkin's petition for further review on the issue of whether the cause of action accrued before Savoie's death. We also granted Security Bank's request for cross-review. Security Bank argues that the court of appeals incorrectly concluded that, if no cause of action for legal malpractice accrues during a client's lifetime, "no cause of action exists to which a personal representative may succeed after the client's death[.]" Id. at 825. Security Bank also renews its argument that it has standing as trustee of the Gordon P. Savoie Revocable Trust to sue Larkin for negligent preparation of the estate-planning documents.
ANALYSIS
We review a district court's grant of a motion for judgment on the pleadings "to determine whether 'the complaint sets forth a legally sufficient claim for relief.' " Burt v. Rackner , Inc. , 902 N.W.2d 448, 451 (Minn. 2017) (quoting Zutz v. Nelson , 788 N.W.2d 58, 61 (Minn. 2010) ). In considering whether the district court properly granted the motion, "we 'consider only the facts alleged in the complaint, accepting those facts as true and drawing all reasonable inferences in favor of the nonmoving party.' " Id. Whether a complaint sets forth a legally sufficient claim for relief is a question of law that we *496 review de novo. Walsh v. U.S. Bank, N.A. , 851 N.W.2d 598, 606 (Minn. 2014).
For Security Bank to bring a cause of action for legal malpractice, Security Bank must have standing to bring the action in the first instance. See In re Petition for Improvement of Cty. Ditch No. 86 , 625 N.W.2d 813, 817 (Minn. 2001) ("Standing is a prerequisite to a court's exercise of jurisdiction."). Standing is the "requirement that a party have a sufficient stake in a justiciable controversy." McCaughtry v. City of Red Wing , 808 N.W.2d 331, 338 (Minn. 2011) (citation omitted) (internal quotation marks omitted). A party may acquire standing either as the beneficiary of a statutory grant of standing or by suffering an "injury-in-fact." Webb Golden Valley, LLC v. State , 865 N.W.2d 689, 693 (Minn. 2015). Further, in the legal-malpractice context, a non-client third party must establish that it was a "direct and intended beneficiary" of the attorney's services. McIntosh County Bank v. Dorsey & Whitney, LLP , 745 N.W.2d 538, 547 (Minn. 2008).
Security Bank argues that it has standing either in its capacity as personal representative, or in its capacity as trustee. We address each argument in turn.
I.
The parties' arguments contemplate two potential routes for Security Bank to have standing as personal representative: as successor to a cause of action that accrued to Savoie during his lifetime, or in its own right regardless of whether a cause of action accrued before or after Savoie's death. As set out below, neither route leads to standing for Security Bank.
"Accrual" refers to the point in time when "a plaintiff can allege sufficient facts to survive a motion to dismiss for failure to state a claim upon which relief can be granted." Frederick v. Wallerich , 907 N.W.2d 167, 173 (Minn. 2018) (citing Antone , 720 N.W.2d at 335 ). Accrual of a cause of action requires the existence of operative facts supporting each element of the claim. See id. ("An analysis of when a claim accrues ... necessarily involves consideration of all elements of the claim."); Cause of Action , Black's Law Dictionary (10th ed. 2014) (defining "cause of action" as "[a] group of operative facts giving rise to one or more bases for suing; a factual situation that entitles one person to obtain a remedy in court from another person"). Thus, a cause of action does not "exist" as a matter of law until it accrues-the point at which the operative facts supporting each element of the claim come into existence.
To state a claim for legal malpractice related to transactional legal services, which are at issue here, a plaintiff must plead four elements: (1) the existence of an attorney-client relationship; (2) acts constituting negligence or breach of contract; (3) that such acts were the proximate cause of plaintiff's damages; and (4) that, but for the attorney's conduct, the plaintiff would have obtained a more favorable result in the relevant matter. Frederick , 907 N.W.2d at 173.
The parties do not dispute that the facts alleged in Security Bank's complaint satisfy the elements of a claim for legal malpractice insofar as Security Bank stands in its capacity as personal representative.[1]
*497 Specifically, Larkin does not dispute that Security Bank has adequately alleged that damages occurred as a result of the alleged negligence. Instead, Larkin disputes when the alleged damages occurred. Larkin argues that, if damages did not occur during Savoie's lifetime, Security Bank is precluded from bringing a claim for legal malpractice against it. In other words, because the cause of action did not accrue, or exist, during the life of Savoie, no cause of action survived to Security Bank. Security Bank disputes that the cause of action did not accrue during Savoie's lifetime-an argument we address below-but its principal argument is that a legal-malpractice claim need not accrue during a deceased client's lifetime to allow the personal representative to pursue it after the client's death.
A.
We first address whether a claim for legal malpractice must accrue during the client's lifetime, or whether a personal representative may pursue a claim for legal malpractice that did not accrue until after the client's death. Security Bank argues that Minn. Stat. § 524.3-703, as a matter of law, affords a personal representative standing to pursue any legal-malpractice claim on behalf of a deceased client because those claims "survive" to the personal representative under Minn. Stat. § 573.01 (2016).
Minnesota Statutes § 573.01 states:
A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02. All other causes of action by one against another, whether arising on contract or not, survive to the personal representatives of the former and against those of the latter.
The parties agree that legal-malpractice claims survive to a decedent's personal representative because such claims do not "aris[e] out of an injury to the person" under Minn. Stat. § 573.01. See Johnson v. Taylor , 435 N.W.2d 127, 129 (Minn. App. 1989), rev. denied (Minn. Apr. 19, 1989).
The question remains whether an action must accrue during the lifetime of the decedent to survive to the personal representative, thus giving the personal representative standing under Minn. Stat. § 524.3-703. That statute states, in relevant part:
Except as to proceedings which do not survive the death of the decedent, a personal representative of a decedent domiciled in this state at death has the same standing to sue and be sued in the courts of this state and the courts of any other jurisdiction as the decedent had immediately prior to death.
Minn. Stat. § 524.3-703(c).
Security Bank's argument-that a claim need not accrue during the client's life-is not borne out by the plain, unambiguous text of section 524.3-703(c). See State v. Boecker , 893 N.W.2d 348, 351 (Minn. 2017) ("The plain language of the statute controls when the meaning of the statute is unambiguous."). The statute states that "a personal representative ... has the same standing to sue ... as the decedent had immediately prior to death ." Minn. Stat. § 524.3-703(c) (emphasis added). For Security Bank's argument to be valid, Savoie himself would have needed to have standing to bring a legal-malpractice claim against Larkin immediately before his death. In other words, the cause of action would need to have existed, or accrued, before Savoie died. Thus, the only question relevant to Security Bank's standing in its *498 capacity as Savoie's personal representative is whether a cause of action accrued to Savoie before he died.
B.
We have previously addressed the issue of accrual for the purpose of determining when the statute of limitations on a cause of action for legal malpractice begins to run.[2] In that context, we have adhered to the "damage rule" of accrual. See Frederick , 907 N.W.2d at 178 ; Antone , 720 N.W.2d at 335-36 ; Herrmann v. McMenomy & Severson , 590 N.W.2d 641, 643 (Minn. 1999).
The "damage rule" differs from two rules of accrual used in other jurisdictions-the "occurrence rule" and the "discovery rule." The "occurrence rule" holds that a cause of action for professional negligence accrues simultaneously with the performance of the negligent act. Antone , 720 N.W.2d at 335 ; see also Mallen, supra , § 23:22. The "discovery rule" holds that the cause of action accrues at the moment when the client knows or should know the essential facts giving rise to the cause of action. Antone , 720 N.W.2d at 335 ; Mallen, supra , § 23:54. The "damage rule" strikes a middle ground, requiring that "some damage" has occurred as a result of the alleged professional negligence, but not requiring that a prospective plaintiff be aware of all the operative facts giving rise to a cause of action. Antone , 720 N.W.2d at 335-36. We have adopted the damage rule, recognizing that it accomplishes the goals of discouraging "speculative litigation" and limiting "open-ended liability." See id. at 335.
We have interpreted and applied the damage rule in the legal-malpractice context on three previous occasions. First, in Herrmann v. McMenomy & Severson , Herrmann alleged that the law firm was negligent in failing to advise him that certain transactions between Herrmann's construction company and the company's employee pension plan and trust were prohibited by federal tax law. 590 N.W.2d at 642. As a result, the construction company became liable for "significant federal excise taxes and interest." Id. We held that a cause of action for legal malpractice accrues when " 'some' damage has occurred as a result of the alleged malpractice." Id. at 643. In Herrmann's case, the action accrued at the moment when the construction company and the plan engaged in the "first prohibited transaction," causing the construction company to become "immediately liable for the excise tax and interest required" by federal law. Id. at 643-44.
Later, in Antone , we addressed the preparation of an allegedly defective antenuptial agreement. 720 N.W.2d at 333. Antone hired attorney Mirviss to draft an antenuptial agreement to protect Antone's interest in any marital appreciation of his premarital property. Id. Under the assumption that the agreement contained this protection, Antone married his fiancée. Id. Twelve years later, during divorce proceedings, Antone discovered that the agreement he and his fiancée (later spouse) signed entitled the spouse to a share of the marital appreciation of Antone's premarital property, despite Mirviss's assurances to the contrary. Id. Antone sued Mirviss for legal malpractice and Mirviss moved to dismiss, arguing that Antone's claim fell outside the six-year statute of limitations. Id. at 333-34. We agreed.
We defined the occurrence of "some damage" as "the occurrence of any *499 compensable damage, whether specifically identified in the complaint or not." Id. at 336. We concluded that Antone suffered "some damage" when he entered into his marriage. Id. at 337. At that point, the consequences of the ineffective antenuptial agreement became "immediate and irremediable." Id. We also said, however, that "our case law does support a broad interpretation of the concept of 'some damage.' " Id. at 336. "Some damage" can occur, and a cause of action accrues, even where "greater injury remains uncertain." Id. (quoting 3 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 22.12 (2006) ) (internal quotation marks omitted).
Most recently, in Frederick v. Wallerich , we addressed whether successive acts of alleged negligence by the same attorney can give rise to independent causes of action for legal malpractice. 907 N.W.2d at 174. In Frederick , the attorney prepared an unenforceable antenuptial agreement signed by Frederick and his then-fiancée. Id. at 170-71. Later, the same attorney drafted a will for Frederick that incorporated the defective antenuptial agreement, affirmatively reassuring Frederick that the agreement was valid and enforceable. Id. at 171. Following his divorce, Frederick sued the attorney for malpractice, even though the statute of limitations for the alleged negligent preparation of the antenuptial agreement had expired. Id. Frederick argued, however, that the attorney's subsequent representations regarding the validity of the antenuptial agreement, together with her incorporation of the agreement into the will, constituted an independent act of legal malpractice, triggering its own statute of limitations period. Id. at 172. We agreed.
In assessing whether "some damage" occurred when the attorney drafted, and Frederick executed, his will, we explained that Frederick had lost the "opportunity to mitigate additional damages" as a result of a second negligent act-the attorney's failure to inform Frederick of the invalidity of the antenuptial agreement when drafting the will. Id. at 179. As a result of this second negligent act, Frederick was exposed to "an additional $1 million in asset appreciation" owed to his spouse. Id. (emphasis added).
In each of these three cases, "some damage" involved concrete harm created either by financial liability or the loss of a legal right. Here, no concrete harm as a result of Larkin's allegedly negligent advice occurred until after Savoie's death, when the estate became liable for the generation-skipping transfer tax. Security Bank's complaint contains no allegation that Savoie himself sustained any material injury or harm as a result of his reliance on Larkin's advice. Mere continued reliance by the client on allegedly negligent advice given earlier by the attorney is not sufficient to give rise to "some damage." To hold as such would undermine the policy goals supporting the damage rule of accrual. See Antone , 720 N.W.2d at 335. Accordingly, under the damage rule, no cause of action for malpractice survived to Security Bank because one did not accrue during Savoie's lifetime.[3]
II.
In its capacity as trustee of the Gordon P. Savoie Revocable Trust, Security Bank argues that it has standing to bring a claim for legal malpractice on behalf of the trust *500 and on behalf of itself as trustee. See Minn. Stat. § 501C.0816(23) (2016) (providing a trustee with the authority to "prosecute or defend an action, claim, or judicial proceeding in any jurisdiction to protect trust property and the trustee in the performance of the trustee's duties").
As a general rule, attorneys are "liable for professional negligence only to a person with whom [they] ha[ve] an attorney-client relationship." McIntosh , 745 N.W.2d at 545. This requirement of "privity" goes to the first element of a claim for legal malpractice-the existence of an attorney-client relationship. See Frederick , 907 N.W.2d at 173 (explaining the elements of a claim for legal malpractice); McIntosh , 745 N.W.2d at 545 (explaining the privity requirement in legal-malpractice actions). Thus, without establishing privity or satisfying an exception to the general rule requiring privity, a plaintiff cannot state a claim for legal malpractice. Because Larkin did not have an attorney-client relationship either with Security Bank or with the trust,[4] Security Bank must satisfy an exception to the general rule requiring privity.
We recognize an exception in the estate-planning context when a non-client third party was a "direct and intended beneficiary of the lawyer's services." Marker v. Greenberg , 313 N.W.2d 4, 5 (Minn. 1981) (citation omitted) (internal quotation marks omitted). We have said that this exception is "very limited." Id.
In McIntosh , we outlined a two-step inquiry to determine whether a non-client third party can pursue a claim for legal malpractice as a "direct and intended beneficiary" of attorney legal services. 745 N.W.2d at 547. The party must satisfy the threshold requirement that it was, in fact, a "direct and intended beneficiary" of the attorney's services. Id. If the party satisfies that threshold requirement, we look to the so-called " Lucas factors" to ascertain "the extent of the duty" that the attorney owed to the third party.[5] Id.
Thus, the first question we must address is whether a trustee, or the trust itself, can be a "direct and intended beneficiary" of an estate-planning attorney's services. A third party is "a direct beneficiary of a transaction if the transaction has[,] as a central purpose[,] an effect on the third party and the effect is intended as a purpose of the transaction." Id. (emphasis added). A third party is an "intended beneficiary" if the attorney is "aware of the client's intent to benefit the *501 third party." Id. at 547-48 (emphasis added).
Estate-planning services were not at issue in McIntosh , but we characterized the estate-planning context as the classic situation where a client makes an intent to directly benefit third parties clear by naming them in estate-planning instruments. See generally id. at 545-48 (discussing "the will-drafting context in which the third-party beneficiary theory was first developed"). In dicta, we said that in "drafting situations, whether the instruments are wills, trust agreements, or deeds, the attorney is necessarily aware of the client's intent when the client asks for documents making gifts or transferring property to particular persons named in the instruments." Id. at 548.
The instrument drafted here included a trust. A trust creates a "separation of the legal and beneficial interests in a thing or res , as it is called, whereby the legal interests in the trust res are held by a person, the trustee, for the benefit of another, the beneficiary, who has an equitable interest in the res to receive whatever benefits he is entitled to therefrom by the terms of the trust." Farmers State Bank of Fosston v. Sig Ellingson & Co. , 218 Minn. 411, 16 N.W.2d 319, 322 (1944). In other words, a trust has three basic components: a trustee, a beneficiary, and the "thing," or res, the interest in which is divided between the trustee and the beneficiary. A trust, then, is not itself a "thing" or a person under the law.
Moreover, in McIntosh , we distinguished between "instruments" drafted by an attorney, and those "particular persons" whom the client intends to benefit by "the instruments." 745 N.W.2d at 548. Those "particular persons," typically the trust beneficiaries, are the direct and intended beneficiaries of the attorney's legal services; "the instruments" are merely a vehicle by which a person benefits from attorney legal services. See id. Therefore, the trust itself cannot be a direct and intended beneficiary of Larkin's legal services.
Security Bank also argues that, as trustee and "the entity that paid the taxes," it was itself a direct and intended beneficiary of Larkin's services to Savoie. According to Security Bank's complaint, "[u]pon the death of Gordon Savoie, Paul Plunkett became the trustee, due to the document drafted by [Larkin]. Later on, when a dispute arose over the administration of the trust, Plaintiff, Security Bank & Trust Co. was designated and appointed successor trustee and personal representative." Other than describing these arrangements, Security Bank's complaint does not contain any allegations pertaining to Savoie's intent to benefit Security Bank. Further, although Savoie's will and trust agreement are in the record before us, those documents do not establish any intent to benefit Security Bank.
Assuming a trustee could, in some circumstances, be a direct and intended beneficiary of an estate-planning attorney's services, Security Bank has not effectively pleaded such a theory. Even if Savoie's estate plan had, "as a central purpose[,] an effect" on Security Bank, we cannot say based on our review of the complaint that Larkin was "aware of [Savoie's] intent to benefit" Security Bank. McIntosh , 745 N.W.2d at 548. Under such circumstances, we cannot conclude that Security Bank was a direct and intended beneficiary of Larkin's estate-planning services.
Because Security Bank has failed to satisfy the threshold question in our third-party-beneficiary analysis, we do not reach the Lucas factors. Id. at 549 ("Because the respondents are not direct and intended beneficiaries, we do not reach the Lucas *502 factors."). We therefore conclude that Security Bank has not satisfied the third-party exception to the privity requirement, and thus has not satisfied the first element of a legal-malpractice claim. Accordingly, Security Bank cannot state a claim for legal malpractice against Larkin in its capacity as trustee.
CONCLUSION
For the foregoing reasons, we reverse the decision of the court of appeals.
Reversed.
THISSEN, J., not having been a member of this court at the time of submission, took no part in the consideration or decision of this case.

In its capacity as personal representative, Security Bank would "stand[ ] in the shoes" of Savoie. 4 Ronald E. Mallen, Legal Malpractice § 36:9 (2018 ed.). Thus, there is no dispute that the first element-the existence of an attorney-client relationship-is satisfied with respect to Security Bank's standing as personal representative. For the purposes of Security Bank's alternative argument-that it has standing as trustee-Security Bank must still plead facts that satisfy this first element.

The parties do not argue that a different rule of accrual applies for purposes of survival than for the purpose of commencing the statutory limitations period.

In so holding, we do not foreclose the possibility that a personal representative could, in theory, plead facts that would give rise to an estate-planning malpractice claim that accrued before a client's death because the personal representative sufficiently alleged that "some damage" occurred during the client's lifetime.

We note that Security Bank's arguments regarding its standing as trustee have not been clear or consistent. In its first brief to our court, Security Bank asserted that "[t]he trustee of a revocable trust acts as the grantor, following the death of the grantor. As such, the trustee has a direct attorney-client relationship with the attorneys that created the trust." (Emphasis added.) Security Bank cites no legal authority and provides no additional analysis supporting these propositions. Moreover, Security Bank appears to have abandoned this argument in its reply brief and at oral argument.

We adopted the Lucas factors in Marker v. Greenberg , 313 N.W.2d at 4, 5. The factors come from a California case, Lucas v. Hamm , 56 Cal.2d 583, 15 Cal.Rptr. 821, 364 P.2d 685 (1961). In Lucas , the California Supreme Court said that "the determination whether in a specific case the [attorney-]defendant will be held liable to a third person not in privity ... involves the balancing of various factors." Id. , 15 Cal.Rptr. 821, 364 P.2d at 687. Those include:
[T]he extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm to him, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury, and the policy of preventing future harm.
Id.