# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3453

_____

Robert Francis Gelschus, Personal Representative of Estate of Sally Aileen Hogen

*Plaintiff - Appellant*

v.

Clifford Charles Hogen, an individual; Honeywell International Inc., a Delaware Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: June 14, 2022
Filed: August 29, 2022

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Sally A. Hogen made contributions to a 401(k) plan during her employment at Honeywell International Inc. She originally designated her husband, Clifford C. Hogen, as the sole beneficiary in the event of her death. Sally and Clifford divorced in 2002. In the marital termination agreement (MTA), they agreed that "[Sally] will be awarded, free and clear of any claim on the part of [Clifford], all of the parties'

right, title, and interest in and to the Honeywell 401(k) Savings and Ownership Plan."

In 2008, Sally submitted a change-of-beneficiary form to Honeywell. She, however, did not comply with a requirement. She allocated "33 1/3%" of the 401(k) benefits to each of her siblings.[1] The instructions said, "**The Allocation % must be whole percentages**." Because she did not use whole percentages, Honeywell did not change her designation. Honeywell called Sally and left a message notifying her of the rejection. Honeywell also sent eleven annual statements showing Clifford as the sole beneficiary. She took no further action.

Sally died in 2019, with nearly $600,000 in her 401(k) plan. Honeywell paid the benefits to Clifford. Robert F. Gelschus, as personal representative of Sally's estate, sued Honeywell for breach of fiduciary duty, and Clifford for breach of contract, unjust enrichment, conversion, and civil theft.[2] The district court granted summary judgment to both defendants. It ruled that Honeywell did not breach a fiduciary duty because it complied with ERISA's "plan documents rule." As for Clifford, the district court determined that Gelschus did not have standing and, even if he did, his claims failed on the merits because there was no genuine dispute of fact whether Clifford breached the MTA.

Gelschus appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms summary judgment for Honeywell and reverses summary judgment for Clifford on the breach of contract and unjust enrichment claims.

---

[1]Sally had three living siblings in 2008: William J. Gelschus, Robert F. Gelschus, and Mary E. Gelschus. William predeceased Sally.

[2]Gelschus also sued Clifford for fraud and constructive trust. Those claims were not appealed.

I.

Gelschus claims that Honeywell breached its fiduciary duties under ERISA by failing to remove Clifford as beneficiary and by distributing benefits to him. The district court, finding Honeywell complied with the "plan documents rule," granted summary judgment. This court reviews de novo a grant of summary judgment. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

Discretion is the "benchmark for fiduciary status" under ERISA. *Skelton v. Radisson Hotel Bloomington*, 33 F.4th 968, 973 (8th Cir. 2022), *citing* **29 U.S.C. § 1002(21)(A)**. Where an ERISA plan gives an administrator discretionary authority to determine eligibility for benefits, a district court will ordinarily review the administrator's decision for abuse of discretion. *Kecso v. Meredith Corp.*, 480 F.3d 849, 851-52 (8th Cir. 2007), *citing* *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

The parties dispute whether the Honeywell 401(k) Plan gives the plan administrator discretion over eligibility for benefits. Gelschus emphasizes the Plan's statement: "The Plan Administrator has full discretionary authority and power to control and manage all aspects of the Plan, determine eligibility for Plan benefits, interpret and construe the terms and provisions of the Plan, to determine questions of fact and law, direct distributions, and adopt rules for the administration of the Plan as it may deem appropriate . . . ."

Honeywell counters that, while there is discretion to create beneficiary designation forms, the Plan does not give the administrator discretion to accept designations that fail to comply with the forms. Honeywell emphasizes the Plan Summary: "[A] designation or change of Beneficiary may be made by properly completing and submitting, prior to your death, a Beneficiary/Consent Designation Form through the Savings Programs Website or by calling HR Help, Option 1." The Form states, "In the event of my death, I hereby designate the following as my

Beneficiary to receive distribution of my account in the Plan . . . . **The Allocation % must be whole percentages.**"

Even if the Plan gave the administrator discretion to accept Sally's defective Form, it is not an abuse of discretion to act in accordance with plan documents. ERISA directs administrators to "discharge [their] duties . . . in accordance with the documents and instruments governing the plan." **29 U.S.C.A. § 1104(a)(1)(D)** (alteration added).  On similar facts, the Supreme Court upheld summary judgment for the plan administrator, ruling:

> ERISA requires "[e]very employee benefit plan [to] be established and maintained pursuant to a written instrument," "specify[ing] the basis on which payments are made to and from the plan."  The plan administrator is obliged to act "in accordance with the documents and instruments governing the plan . . . ," and ERISA provides no exemption from this duty when it comes time to pay benefits . . . .
>
> The Estate's claim therefore stands or falls by "the terms of the plan," a straightforward rule of hewing to the directives of the plan documents that lets employers "establish a uniform administrative scheme, [with] a set of standard procedures to guide processing of claims and disbursement of benefits."  The point is that by giving a plan participant a clear set of instructions for making his own instructions clear, ERISA forecloses any justification for enquiries into nice expressions of intent, in favor of the virtues of adhering to an uncomplicated rule:  "simple administration, avoid[ing] double liability, and ensur[ing] that beneficiaries get what's coming quickly, without the folderol essential under less-certain rules."

*Kennedy v. Plan Adm'r for DuPont Sav. & Inv. Plan*, 555 U.S. 285, 300-01 (2009) (citations omitted).

This court applied *Kennedy* in *Matschiner*, granting summary judgment to a plan administrator who distributed life insurance benefits to the decedent's ex-husband based on the only valid designation in its files. *Matschiner v. Hartford Life & Acc. Ins. Co.*, 622 F.3d 885, 889 (8th Cir. 2010) "Hartford acted in

accordance with the plan documents and therefore did not abuse its discretion." ***Id.*** at 888.

Like the plan documents in *Kennedy* and *Matschiner*, the Honeywell 401(k) Plan established a "uniform administrative scheme" with a "set of standard procedures" for designating beneficiaries. The plan administrator did not abuse its discretion by acting in accordance with plan documents and rejecting the defective change-of-beneficiary form.

Neither did Honeywell abuse its discretion by distributing plan benefits to Clifford after learning about the MTA. The Plan says, "Upon the death of a Participant . . . the Participant's Beneficiary shall be entitled to elect that the Participant's Account Balance be distributed in a lump sum." After Sally submitted the defective change-of-beneficiary form, Honeywell promptly contacted her with instructions on how to submit a valid designation. For whatever reason, she did not. *See **Matschiner***, 622 F.3d at 889 ("[T]he plan provided an easy way for [the Matschiners] to change the designation, but for whatever reason [they] did not . . . . The plan administrator therefore did exactly what [29 U.S.C.] § 1104(a)(1)(D) required . . . ."), *quoting **Kennedy***, 555 U.S. at 303. When Sally died, the only valid designation named Clifford as sole beneficiary. Honeywell did not abuse its discretion by following the Plan's instructions to distribute benefits in accordance with that designation.

Gelschus further argues that this case is not controlled by *Kennedy* and *Matschiner* because Sally tried to submit a change-of-beneficiary form that "substantially complied" with the plan's requirements, citing *Sun Life Assurance Company of Canada v. Wasko*, 939 F. Supp. 2d 944, 953 (S.D. Iowa, 2013) and *Phoenix Mutual Life Insurance Company v. Adams*, 30 F.3d 554, 564 (4th Cir. 1994). *Kennedy* instructs against "blur[ring] the bright-line requirement to follow plan documents in distributing benefits." ***Kennedy***, 555 U.S. at 302 (alteration added). "[A]ssuming for the sake of argument that the substantial-compliance doctrine remains available after *Kennedy* and *Matschiner*," it "would not deprive the

administrator of the power to require strict compliance with the terms of the plan." ***Hall v. Metro. Life Ins. Co.***, 750 F.3d 995, 999 (8th Cir. 2014).

Because Honeywell followed plan documents in rejecting Sally's defective change-of-beneficiary form and distributing benefits, Gelschus's breach of fiduciary duty claim fails. The district court properly granted summary judgment.

## II.

Gelschus appeals the summary judgment for Clifford. The district court ruled that the claims against Clifford are not preempted by ERISA. However, it ruled that the claims fail for lack of standing and lack of a genuine dispute of fact whether Sally and Clifford intended that the MTA waive Clifford's beneficiary interest in the 401(k) plan.

## A.

Clifford argues that Gelschus's claims are preempted by ERISA. True, *Kennedy* did not answer whether a personal representative may sue a recipient of ERISA benefits after distribution. ***Kennedy***, 555 U.S. at 299 n.10 ("Nor do we express any view as to whether the Estate could have brought an action in state or federal court against Liv to obtain the benefits after they were distributed."). However, every circuit to address the question holds that ERISA does not preempt such suits.

In the closest case, a divorce agreement waived the wife's interests in the husband's 401(k) plan. ***Est. of Kensinger v. URL Pharma, Inc.***, 674 F.3d 131, 132-33 (3d Cir. 2012) ("[T]he parties mutually agree to waive, release, and relinquish any and all right, title and interest either may have in and to the other's IRA account(s), or any other such retirement benefit and deferred savings plan of like kind and character, and neither shall make any claim to possession of such property as it is presently titled."). The ex-husband died shortly after the divorce, leaving the

ex-wife as his designated beneficiary.  ***Kensinger***, 674 F.3d at 133.  Benefits were distributed to the ex-wife, and the ex-husband's estate sued her.  The question was: "after the plan administrator distributes the funds to [the ex-wife], can the Estate attempt to recover the funds by bringing suit directly against [the ex-wife] to enforce her waiver?"  ***Id.*** at 132 (alterations added).  The Third Circuit allowed the suit to proceed, reasoning that the goals of the plan documents rule—"straightforward administration of plans," "avoidance of potential double liability," and "expeditious payment of plan proceeds"—are irrelevant to post-distribution suits against recipients of ERISA benefits.  ***Id.*** at 136-37.

Later state and federal appellate court cases consistently hold that ERISA does not preempt post-distribution suits against recipients.  *See e.g.*, ***Andochick v. Byrd***, 709 F.3d 296, 300 (4th Cir. 2013) ("[W]e conclude that permitting post-distribution suits accords with the ERISA objectives discussed in *Kennedy*."); ***Metlife Life & Annuity Co. of Connecticut v. Akpele***, 886 F.3d 998, 1007 (11th Cir. 2018) ("This court likewise holds as mandated by the Supreme Court in *Kennedy* that a party who is not a named beneficiary of an ERISA plan may not sue the plan for any plan benefits.  A party, however, may sue a plan beneficiary for those benefits, but only after the plan beneficiary has received the benefits."); ***Moore v. Moore***, 297 So. 3d 359, 365 (Ala. 2019) ("As shown in *Kensinger*, *supra*, ERISA has no bearing on an estate's post-distribution breach-of-contract action against a spouse regarding the proper ownership of distributed benefits.").

This court's precedent aligns with the consensus view.  In *Matschiner*, the daughters sued the plan administrator *and the recipient* (their mother's ex-husband) to recover life insurance benefits.  ***Matschiner***, 622 F.3d at 886 ("The Matschiners sued Hartford *and Alan Lewis* in state court to recover the benefit paid to Alan." (emphasis added)).  This court affirmed summary judgment for the administrator but allowed the daughters' claims against the ex-husband to proceed.  ***Id.*** at 889 ("[T]he case is remanded with instructions to enter judgment dismissing the claims against Hartford with prejudice.  That will leave the Matschiners' separate claims against Alan Lewis, which may or may not have an independent basis of federal

jurisdiction. If not, the district court will need to decide whether to exercise its supplemental jurisdiction or to dismiss these state law claims without prejudice.").

Agreeing with this persuasive authority, this court rules that Gelschus's claims against Clifford are not preempted by ERISA.

B.

The district court ruled that Gelschus, as personal representative of Sally's estate, does not have standing to sue for breach of contract. This court reviews de novo dismissal for lack of standing, accepting the material allegations in the complaint as true and drawing all inferences in the plaintiff's favor. *In re SuperValu, Inc.*, 870 F.3d 763, 768 (8th Cir. 2017).

The district court relied on the Minnesota Supreme Court's decision in *Security Bank & Trust Company v. Larkin, Hoffman, Daly & Lindgren, Ltd.*, 916 N.W.2d 491 (Minn. 2018). A law firm did not advise the client about an estate's liability for a generation-skipping transfer tax of $1.65 million. *Sec. Bank*, 916 N.W.2d at 494. The personal representative of the client's estate sued for legal malpractice. The firm challenged the personal representative's standing. The Minnesota Supreme Court focused exclusively on Minn. Stat. § 524.3-703(c), which says, "a personal representative of a decedent domiciled in this state at death has the same standing to sue . . . as the decedent had immediately prior to death." *Id.* at 497. Because the "only question relevant to Security Bank's standing in its capacity as [the client's] personal representative [was] whether a cause of action accrued to [the client] before he died," and because the legal malpractice claim did not accrue until the estate was taxed, the personal representative lacked standing. *Id.* at 497-98 (alterations added).

Applying *Security Bank*, the district court here ruled that, because the alleged breach of contract (Clifford's acceptance of the 401(k) benefits) occurred after Sally's death, Gelschus lacked standing as personal representative.

However, in *Security Bank*, the Minnesota Supreme Court proceeded to consider whether the bank, as trustee of the client's trust, was an intended third-party beneficiary of the trust instrument. If so, the bank would have had standing for the malpractice claim, even though it was not in privity with the law firm. *Id.* at 500-01. The district court here did not consider third-party beneficiary standing.

Gelschus's complaint alleges that the MTA waived Clifford's beneficiary interest in Sally's 401(k) plan. Accepting this material allegation as true for the purpose of standing, Gelschus may sue to enforce the contract as a third-party beneficiary. "Generally, a stranger to a contract does not have rights under the contract, but an exception exists if a third party is an intended beneficiary of the contract." *Hickman v. SAFECO Ins. Co. of Am.*, 695 N.W.2d 365, 369 (Minn. 2005). A person is an intended beneficiary "if the circumstances indicate that the promisee intends to give [him or her] the benefit of the promised performance." *Id.* (alteration added), *quoting* **Restatement (Second) of Contracts** § 302 (1979).

Here, the "promised performance" was Clifford's waiver of Sally's 401(k) benefits. Because Clifford could only perform his waiver after Sally's death, Sally could not enjoy the benefit herself. Instead, Sally intended the waiver to benefit either (1) other designees, like her siblings whom she tried to designate in 2008, or (2) her estate, if she made no other designation. If she intended option (1), Gelschus has third-party beneficiary standing as assignee of "all of [the living siblings'] right, title, estate, and interest . . . in the Honeywell 401(k) Savings and Ownership Benefit Plan." Assignments of Robert and Mary Gelschus, *Gelschus v. Hogen*, No. 0:20-cv-00823, DCN 91-4 (D. Minn. Aug. 4, 2021). If she intended option (2), Gelschus has third-party beneficiary standing as personal representative of the estate.

Clifford argues that Gelschus waived the issue of third-party beneficiary standing. *See* **Gillpatrick v. Frakes**, 997 F.3d 1258, 1259 (8th Cir. 2021) (appellant may "waive[] [an] issue by failing to provide a meaningful explanation of the argument and citation to relevant authority in their opening brief" (alterations added)). However, Gelschus argues on appeal, "If the distinction is made that

-9-

Decedent's intended beneficiary would be a party with standing, the district court was apprised that Decedent's siblings had assigned their claims to the estate." Clifford's brief acknowledges this argument: "The Estate seemingly argues that if the Estate does not have standing, its beneficiaries (Robert and Mary) do and they have assigned their claims to the Estate." In the district court, Gelschus also discussed third-party beneficiary standing while opposing Clifford's motion for summary judgment. *See* Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, **Gelschus v. Hogen**, No. 0:20-cv-00823, DCF 90 at 12-14 (Aug. 4, 2021) ("In *Andochick*, the court . . . predicated its finding of standing on the fact that the decedent's family had standing as third-party beneficiaries . . . . Plaintiff has asserted that it was Decedent's intent to remove Defendant as the beneficiary, which would mean the estate was the rightful beneficiary. Even if the injured parties are the Decedent's heirs, or the beneficiaries she attempted to name, the estate would be the proper party to this action under the assignments of claims. The estate therefore has this claim not as a survival of Decedent's claim, but directly."), *citing* **Andochick v. Byrd**, No. 1:11-CV-739, 2012 WL 1656311, at \*5 (E.D. Va. May 9, 2012) (decedent's parents had third-party beneficiary standing as personal representatives of estate to enforce divorce agreement waiving ex-husband's interests in decedent's 401(k) plan), *aff'd*, 709 F.3d 296, 301 (4th Cir. 2013).

If the MTA waived Clifford's beneficiary interest in Sally's 401(k) plan, Gelschus has third-party beneficiary standing to enforce the waiver, either as the personal representative of Sally's estate or as the assignee of the siblings' claims.[3]

---

[3]Gelschus asserts two other bases for standing: that the estate suffered an injury-in-fact, and that another statute authorizes a personal representative to "maintain an action to recover possession of property or to determine the title thereto." **Minn. Stat. § 524.3-709**. Because Gelschus has standing to enforce the MTA as a third-party beneficiary, this court need not address these arguments.

## C.

The district court concluded that there is no genuine dispute whether Sally and Clifford intended for the MTA to waive his beneficiary interest in the 401(k) plan. *See* **Fed. R. Civ. P. 56(a)** ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." ***Id.*** at 255.

Here, the MTA states, "[Sally] will be awarded, free and clear of any claim on the part of [Clifford], all of the parties' right, title, and interest in and to the Honeywell 401(k)." According to Gelschus, this waived Clifford's ability to receive any benefits from Sally's 401(k). Clifford counters that he and Sally understood this to mean that Sally "could spend the money, take the money and do whatever she wants with it" while she was alive. Clifford asserts that Sally promised to maintain him as beneficiary as part of a "verbal negotiated agreement" made before they signed the MTA.

The district court found the language in the MTA "ambiguous as to whether it covered the beneficiary designation." It cited *In re Estate of Rock*, 612 N.W.2d 891, 893 (Minn. App. 2000), where a provision in a divorce agreement stated, "Each party is awarded all right, title and interest in and to any and all pension, profit sharing, retirement or savings plans in which they may have an interest, free and clear of any claim or right of the other party." The Minnesota Court of Appeals found the provision "ambiguous in that it does not expressly refer to beneficiary designations." ***Rock***, 612 N.W.2d at 895.

Finding the MTA ambiguous, the district court here proceeded to consider extrinsic evidence. Believing that Gelschus "offered no other evidence, based on

personal knowledge and supported by the record, to refute [Clifford's] account of Sally . . . and his understanding of the contract," the district court granted summary judgment for Clifford.

Gelschus maintains that the MTA unambiguously waives Clifford's beneficiary interest in the 401(k) plan. He relies on a different court of appeals opinion, where a divorce agreement stated: "Each party may be awarded all right, title and interest in those life insurance policies covering his or her respective life." *Larsen v. Nw. Nat. Life Ins. Co.*, 463 N.W.2d 777, 780 (Minn. App. 1990). The Minnesota Court of Appeals held that the provision unambiguously waived beneficiary rights:

> Although neither the stipulation nor the dissolution decree specifically referred to the beneficiary designation of decedent's life insurance policy, we believe the references in the decree and stipulation granting "*all right, title and interest*" contemplated rights beyond the cash surrender value of the policy or the right merely to receive physical delivery of the policy . . . . [I]t is clear the provision awarding decedent all interest in her insurance policy was intended to divest Larsen of his right as beneficiary.

*Id.*

The MTA's words "all of the parties' . . . interest in and to the Honeywell 401(k)" certainly seem to encompass (and waive) Clifford's beneficiary interest. But even assuming the MTA is ambiguous, extrinsic evidence creates a genuine dispute of material fact whether Sally and Clifford intended for the MTA to waive Clifford's beneficiary interest in the 401(k) plan.

First, although Clifford alleges a verbal agreement with Sally before the execution of the MTA, the MTA omits any obligation to maintain Clifford as beneficiary. More importantly, the MTA's merger clause states that Sally and Clifford "entered into this Agreement intending that it be a full, complete and final settlement." *See* *Farrell v. Johnson*, 442 N.W.2d 805, 806 (Minn. App. 1989)

-12-

(holding that "[a] merger clause is usually conclusive in determining whether the agreement is completely integrated"); ***Alpha Real Est. Co. of Rochester v. Delta Dental Plan of Minn.***, 664 N.W.2d 303, 312 (Minn. 2003) ("A merger clause establishes that the parties intended the writing to be an integration of their agreement."). This creates an inference that there was no verbal agreement between Sally and Clifford.

Second, much evidence shows that Sally would not have wanted to preserve 401(k) funds for Clifford. Their relationship was not amicable. When they separated, Clifford told Sally that he "wanted to keep in touch with her and be supportive of her during and after the divorce and she said, no, she didn't want to." Clifford testified that, other than a single letter he sent her about a tax matter, the two had no contact or communication from the divorce in 2002 until Sally's death in 2019. Sally's death was the result of long-term health issues escalating in the last two years of her life. Under the terms of the alleged verbal agreement, Sally could have converted the nearly $600,000 balance of her 401(k) plan to assets that would have passed through her estate. It is a reasonable inference that Sally, aware of her declining health, would not have preserved plan funds unless she believed that the MTA precluded them from passing to her ex-husband, whom she had avoided for nearly two decades. *Accord **Sveen v. Melin***, 138 S. Ct. 1815, 1819 (2018) (observing that Minnesota adopted a revocation-on-divorce statute because it "[a]gree[s] with th[e] assumption" that "the typical decedent would [not] . . . want his former spouse to benefit from his pension plan . . . . A wealth transfer [is] a wealth transfer—and a former spouse (as compared with, say, a current spouse or child) [is] not likely to be its desired recipient. So a decedent's failure to change his beneficiary probably resulted from 'inattention,' not 'intention.'" (alterations added)), *discussing* **Minn. Stat. § 524.2-804, subd.1** ("[T]he dissolution or annulment of a marriage revokes any revocable . . . beneficiary designation . . . by an individual to the individual's former spouse in a governing instrument.").

Third, it is undisputed that Sally tried to remove Clifford as her beneficiary in 2008. While Sally might have been breaching a verbal agreement with Clifford, it

is also reasonable to infer that Sally tried to designate new beneficiaries because no verbal agreement prevented her from doing so. The district court was required to draw the latter inference. *See Anderson*, 477 U.S. at 255.

This court concludes that, even if the MTA were ambiguous, a reasonable jury could find that Sally and Clifford intended for the MTA to waive his beneficiary interest in the 401(k). *Id.* at 248. The district court's contrary conclusion is clearly erroneous. *See Rock*, 612 N.W.2d at 894 ("When extrinsic evidence is admitted, the meaning of ambiguous language is a question of fact."). Summary judgment should not have been granted to Clifford on the breach of contract claim.

D.

The district court granted summary judgment to Clifford on Gelschus's claims for unjust enrichment. It decided that the unjust enrichment claim depends on the contract claim: if Clifford did not contractually waive his beneficiary interest, his retention of the 401(k) benefits is not unjust.

"Unjust enrichment is an equitable doctrine that allows a plaintiff to recover a benefit conferred upon a defendant when retention of the benefit is not legally justifiable." *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 838 (Minn. 2012). Unjust enrichment "does not apply when there is an enforceable contract." *Id.* (rejecting plaintiffs' attempt "to bring an unjust enrichment claim to avoid the result that they lack third-party beneficiary status to enforce the contract"). Thus, if the jury finds that the MTA waived Clifford's beneficiary interest in Sally's 401(k) plan, Gelschus's unjust enrichment claim "is not legally supportable." *Id.* at 839.

On the other hand, if the jury finds that the MTA did *not* waive Clifford's beneficiary interest, Gelschus may be able to show unjust enrichment. In *Brown v. Agin*, life insurance benefits were initially distributed to the decedent's wife, despite the fact decedent "did everything that reasonably could have been done" to substitute

his children as beneficiaries. ***Brown v. Agin***, 109 N.W.2d 147, 151 (Minn. 1961). No agreement limited the wife's ability to accept the insurance benefits. Nevertheless, exercising equitable powers, the Minnesota Supreme Court awarded the benefits to the children according to the decedent's clear intentions. ***Id.*** *See also* ***In re Will of Kipke***, 645 N.W.2d 727, 733 (Minn. App. 2002) ("[T]he supreme court has made clear that 'a change of beneficiary may properly be effected in spite of the failure of the insured to comply with each and every policy requirement.'"), *discussing* ***Agin***, 109 N.W.2d at 150.

If the jury finds that the MTA did not waive Clifford's beneficiary interests, the district court must consider whether equity still requires Clifford to give up the 401(k) benefits. *See* ***Cady v. Bush***, 166 N.W.2d 358, 361-62 (Minn. 1969) (unjust enrichment may be invoked "in support of claims based upon failure of consideration, fraud, mistake, and in other situations where it would be morally wrong for one party to enrich himself at the expense of another"); ***Mon-Ray, Inc. v. Granite Re, Inc.***, 677 N.W.2d 434, 440 (Minn. App. 2004) (same).

E.

Gelschus challenges summary judgment to Clifford on the conversion and civil theft claims.

In Minnesota, there is no independent tort for conduct that merely constitutes a breach of contract. *See* ***Toyota-Lift of Minn., Inc. v. Am. Warehouse Sys., LLC***, 868 N.W.2d 689, 696 (Minn. App. 2015).

Gelschus asserts that his conversion and civil theft claims are premised not only on the MTA, but also on Minnesota's revocation-on-divorce statute. *See* **Minn. Stat. § 524.2-804, subd.1**. However, Gelschus cites no authority that accepting an ex-spouse's properly-distributed retirement benefits constitutes "stealing" or "willful interference with personal property." *See* **Minn. Stat. § 604.14, subd. 1** (making a "person who steals personal property from another . . . civilly liable to the

-15-

owner of the property"); ***Thomas B. Olson & Assocs., P.A. v. Leffert, Jay & Polglaze, P.A.***, 756 N.W.2d 907, 920 (Minn. App. 2008) (defining conversion as "an act of willful interference with personal property, done without lawful justification by which any person entitled thereto is deprived of use and possession"), *quoting* **DLH, Inc. v. Russ**, 566 N.W.2d 60, 71 (Minn. 1997).

Gelschus also asserts that these claims are premised on "the doctrine of substantial performance from the line of cases ranging from *Brown v. Agin* . . . to *Lemke v. Schwarz*, 286 N.W.2d 693, 696 (Minn. 1979) and beyond," yet none of those cases involved conversion or civil theft. In fact, the Minnesota Court of Appeals recently observed that Minnesota's civil theft statute "appears to be intended primarily to provide for a recovery if merchandise or other property is stolen from a retail store." ***TCI Bus. Cap., Inc. v. Five Star Am. Die Casting, LLC***, 890 N.W.2d 423, 430 (Minn. App. 2017), *interpreting* **Minn. Stat. § 604.14, subd. 1**; ***Staffing Specifix, Inc. v. TempWorks Mgmt. Servs., Inc.***, 896 N.W.2d 115, 126 (Minn. App. 2017) (no "initial wrongful act" where funds were received from invoices paid by customers, quoting *TCI*, 890 N.W.2d at 431), *aff'd*, 913 N.W.2d 687, 694 (Minn. 2018). Summary judgment on the conversion and civil theft claims was proper.

\* \* \* \* \* \* \*

Summary judgment for Clifford on the breach of contract and unjust enrichment claims is reversed, and the case remanded for further proceedings. In all other respects, the judgment is affirmed.

_____