Filed 8/21/24  Estate of Jackson CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| Estate of MICHAEL JOSEPH JACKSON, Deceased. | B328505 |
| | (Los Angeles County Super. Ct. No. BP117321) |
| JOHN BRANCA et al., as Executors, etc., | |
| Petitioners and Respondents, | |
| v. | |
| KATHERINE JACKSON, | |
| Objector and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mitchell L. Beckloff, Judge.  Affirmed.

Glaser Weil Fink Howard Jordan & Shapiro, Joel N. Klevens, Elizabeth G. Chilton, Robert E. Allen, and Adam Pines for Objector and Appellant.

Kinsella Holley Iser Kump Steinsapir, Jonathan P. Steinsaper and Katherine T. Kleindienst; Saul Ewing, Jeryll S. Cohen; Greines, Martin, Stein & Richland, and Alana H. Rotter for Petitioners and Respondents.

———————————

This appeal concerns the estate of singer Michael Joseph Jackson (Michael), who died in 2009.[1]  Michael's will provided that his entire estate would be given to the Michael Jackson Family Trust (trust), the principal beneficiaries of which are his three children.  However, because of disputes with the Internal Revenue Service (IRS) and others, Michael's estate has not yet been distributed to the trust.

In November 2022, the executors of Michael's estate petitioned the probate court to approve the transaction at issue in this appeal.  In brief, the proposed transaction involves the transfer of estate property to a joint venture between the estate and a third party.  Michael's mother, Katherine Jackson (Katherine), filed objections to the proposed transaction.  The probate court held a several day hearing on Katherine's objections; it then overruled her objections and granted the executors' request to proceed with the proposed transaction.  Katherine has appealed, contending that the proposed transaction violates the terms of Michael's will.

We affirm.  As we discuss, Katherine forfeited her contention that the proposed transaction violates the terms of Michael's will because she did not make that contention below.

_____

[1]    Because many of the parties share a last name, we refer to them by their first names.

In any event, the contention fails on the merits. In brief, Michael's will states that (1) the executors have broad powers to buy and sell estate assets in the estate's best interests, and (2) all of the estate's assets will be distributed to the trust. Katherine contends that the two provisions are fundamentally inconsistent and the probate court's order violates the second provision because it allows estate assets to be transferred to a joint venture, rather than to the trust. We conclude that the provisions are not inconsistent: Read together, they give the executors broad powers to manage estate property while the estate remains in probate, and they provide for the transfer of all estate property to the trust when the probate action is concluded. The proposed transaction is consistent with the terms of Michael's will as so interpreted, and thus the probate court did not abuse its discretion by granting the executors' petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Michael died testate on June 25, 2009. He is survived by his mother, Katherine, and by his three adult children, Michael Joseph Jackson, Jr. (Prince), Paris-Michael Katherine Jackson (Paris), and Prince Michael Joseph Jackson II (Bigi). None of the children is a party to this appeal. Petitioners John Branca and John McClain are the executors of Michael's estate and the trustees of the trust.

## I. Background.

The probate court admitted Michael's will to probate in August 2009. Two articles of the will are relevant to the present appeal. First, Article III provides that Michael's entire estate will be given to the trustees of Michael's trust, and "[a]ll such assets shall be held, managed and distributed as part of said

3

Trust according to its terms." Second, Article V provides: "I hereby give to my Executors, full power and authority at any time or times to sell, lease, mortgage, pledge, exchange or otherwise dispose of the property, whether real or personal[,] comprising my estate, upon such terms as my Executors shall deem best, to continue any business enterprises, to purchase assets from my estate, to continue in force and pay insurance premiums on any insurance policy, including life insurance, owned by my estate, and for any of the foregoing purposes to make, execute and deliver any and all deeds, contracts, mortgages, bills of sale or other instruments necessary or desirable therefor. In addition, I give to my Executors full power to invest and reinvest the estate funds and assets in any kind of property, real, personal or mixed, and every kind of investment, specifically including, but not by way of limitation, corporate obligations of every kind and stocks, preferred or common, and interests in investment trusts and shares in investment companies, and any common trust fund administered by any corporate executor hereunder, which men of prudent discretion and intelligence acquire for their own account."

The principal beneficiaries of Michael's trust are his three children and unnamed charities. Katherine is a life beneficiary of a portion of a sub-trust, the terms of which permit the trustees to " 'distribute as much of the net income and/or principal of the [sub-trust] as the Trustee deems necessary or desirable, in his absolute discretion, for [Katherine's] care, support, maintenance, comfort and well-being." Upon Katherine's death, any assets set aside for her support and maintenance pass to the children's share of the trust.

4

In 2010, the probate court authorized the executors to continue to operate Michael's businesses. Those businesses operate through multiple companies, including joint ventures with third parties, and control the rights to Michael's song recordings and musical compositions, among other things.

To date, no estate assets have been distributed to the trust because of a tax dispute with the IRS and other litigation. Michael's assets thus remain in the estate, subject to probate court supervision.

## II.     The present petition.

In November 2022, the executors petitioned the probate court to approve the business transaction at issue in this appeal. In general terms, the proposed transaction involves transferring a significant portion of the estate's assets to a joint venture between the estate and a third party, in exchange for a large cash payment and an interest in the joint venture.

Katherine was the only party to file written objections to the proposed transaction.[2] She urged that the assets to be

---

[2]     At the initial hearing on the petition, counsel for Prince and Paris represented that their clients did not object to the petition. Counsel for Bigi said he was not then objecting to the petition, but reserved his right to do so in the future.

During the evidentiary hearing, Paris appeared briefly to say she joined her grandmother but did not say specifically what her objection was; the court noted subsequently that it was "not really even sure what Paris Jackson's position is." At the hearing's conclusion, counsel for Prince said his client "has not and does not assert an objection to this transaction." Counsel for

5

transferred were increasing in value; the estate did not currently need the cash from the proposed sale; Michael had told family members prior to his death that the assets should never be sold; and the estate had not taken steps to confirm that the sale price was above fair market value.

The probate court held a several day evidentiary hearing on Katherine's objections. At the hearing's conclusion, the court overruled the objections and authorized the executors to "take all actions necessary to implement the Proposed Transaction, including but not limited to signing all contracts and performing all obligations required of [them]." In doing so, the court found that Michael's will expressly authorized the executors to sell estate property, the executors conducted extensive due diligence before entering into the proposed transaction, and the proposed transaction was in the estate's best interests.

Katherine timely appealed from the order approving the transaction.[3]

---

Bigi joined Katherine's objection, although he noted that Bigi believed the transaction was "a good business deal."

[3] None of the children has appealed from the probate court's ruling. The executors filed a cross-appeal from the probate court's denial of their request for an order pursuant to Probate Code section 1310, subdivision (b), but dismissed their cross-appeal on March 6, 2024.

In their respondents' brief, the executors advised that while this appeal was pending, the estate completed the proposed transaction with regard to some of the assets.

6

## DISCUSSION

Katherine contends on appeal: (1) the probate court's order violates the express provisions of the will, which directs that the "entire estate" go to the trust; (2) the order violates Michael's specific intent to give the "entire estate" to the trust; and (3) the order violates well-established law requiring the executors to preserve the estate pending its transfer under the will's terms.

The executors respond: (1) Katherine did not contend below that the will prohibits the executors from selling the assets, and thus she forfeited the contention; and (2) the probate court properly concluded that the executors were permitted to sell estate property under the will's express language and well-settled legal principles.

As we discuss, the executors are correct that Katherine forfeited the contention that the will prohibits the executors from selling estate assets because she did not raise it below. In any event, on the merits, we conclude that the will and the Probate Code specifically permit the asset sale authorized by the probate court's order. Accordingly, the court did not abuse its discretion by authorizing the proposed transaction.

## I. Appealability and standard of review.

The administration of a trust or estate is a " 'series of separate proceedings, each of which is intended to be final.' " (*Estate of Callnon* (1969) 70 Cal.2d 150, 156; accord, *In re Estate of Loring* (1946) 29 Cal.2d 423, 428; *Meyer v. Meyer* (2008) 162 Cal.App.4th 983, 992; see Ross & Cohen, Cal. Practice Guide: Probate (The Rutter Group 2023) ¶ 3:3 [probate "is a continuous proceeding" which "involves a series of stages, each of which may result in an appealable order or judgment"].) The order at issue

7

here is appealable pursuant to Probate Code[4] section 1300, subdivision (a), which provides that in proceedings governed by the Probate Code, an appeal may be taken from the making of an order "[d]irecting, authorizing, approving, or confirming the sale, lease, encumbrance, grant of an option, purchase, conveyance, or exchange of property."

We review the probate court's order approving the proposed transaction for an abuse of discretion. (E.g., *Estate of Denton* (1971) 17 Cal.App.3d 1070, 1075; *Estate of Beard* (1999) 71 Cal.App.4th 753, 780.) To the extent Katherine's appellate claims concern the interpretation of Michael's will, our review is de novo. (See *Burch v. George* (1994) 7 Cal.4th 246, 254 ["The interpretation of a will or trust instrument presents a question of law unless interpretation turns on the credibility of extrinsic evidence or a conflict therein"]; *Carne v. Worthington* (2016) 246 Cal.App.4th 548, 563 [same].)

## II.    Katherine forfeited her challenges to the probate court's order by failing to raise them below.

The executors urge that Katherine did not contend in the probate court that the proposed asset sale violated the terms of the will and governing law, and thus the contentions are forfeited. We agree.

Generally, an appellant may not raise an issue on appeal unless he or she raised it below. (E.g., *In re Julien H.* (2016) 3 Cal.App.5th 1084, 1089 ["in general, a party who does not raise an argument below forfeits the argument on appeal"]; *In re H.D.*

---

4    All subsequent undesignated statutory provisions are to the Probate Code.

(2024) 99 Cal.App.5th 814, 817 [" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court' "]; *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 (*Howitson*) ["the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"].)  Courts have explained:  " ' " 'Appellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider. . . .  Bait and switch on appeal not only subjects the parties to avoidable expense, but also wreaks havoc on a judicial system too burdened to retry cases on theories that could have been raised earlier.' " ' " (*American Indian Health & Services Corp. v. Kent* (2018) 24 Cal.App.5th 772, 789 (*American Indian Health & Services Corp.*), quoting *Nellie Gail Ranch Owners Assn. v. McMullin* (2016) 4 Cal.App.5th 982, 997.)

Below, Katherine challenged the proposed transaction on the grounds that the assets to be sold were valuable and would appreciate over time, the estate did not need the cash generated by the sale, the sale violated Michael's wishes as communicated to various members of his family, and the executors took no steps to confirm that the sale price was at or above fair market value. Katherine did *not* contend below that the sale violated the terms of Michael's will or was inconsistent with the Probate Code—to the contrary, as the executors note, Katherine *agreed* in the probate court that the will "gives the Executors the power to sell, exchange, or otherwise dispose of the Estate's real or personal property."

In her appellant's reply brief, Katherine urges that she did not forfeit her contention that the proposed transaction violated

the terms of the will because her probate court pleadings invoked Article III of the will.  But preserving an issue for appeal requires more than referring to a fact's existence; courts "may and do 'disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants us to adopt.' " (*Hernandez v. First Student, Inc*. (2019) 37 Cal.App.5th 270, 277.)  Here, while Katherine asserted generally in the probate court that Michael intended the estate's assets to be transferred to the trust, she did *not* contend that the proposed sale violated the will's express language.  She thus did not preserve the issue for appeal.

Katherine alternatively urges that even if she failed to argue below that the proposed transaction violated the will's terms, we nonetheless should consider the issue on the merits because the interpretation of a will is a legal issue that we may address for the first time on appeal.  Katherine is correct only in part.  While a court of review "has discretion to consider an issue not raised in the trial court to the extent it presents a pure question of law or involves undisputed facts" (*Howitson, supra,* 81 Cal.App.5th at p. 489), an appellate court generally will exercise its discretion to consider issues not raised below only where " 'the relevant facts are undisputed and could not have been altered by the presentation of additional evidence' " and the issue " 'involves important questions of public policy or public concern' " (*American Indian Health & Services Corp.*, *supra*, 24 Cal.App.5th at p. 789).  No issues of public policy or public concern are raised by the present appeal; to the contrary, the matter before us is a private dispute concerning the distribution of estate assets for the benefit of Michael's mother and children.

Moreover, the executors suggest that had the purported inconsistency between the proposed sale and the will's terms been raised below, they would have offered additional evidence, including regarding the provisions of the trust, the reasons why the estate's assets have not yet been distributed, and the parties' course of conduct. For both of these reasons, therefore, this is not an appropriate case for us to exercise our discretion to consider an issue not addressed in the probate court.

## III. Katherine's challenge to the probate court's order fails on the merits.

Alternatively, even were we to reach the merits of Katherine's challenge to the probate court's order, we necessarily would affirm because the order does not violate either the will's terms or established probate law.

### A. The order is not inconsistent with the will's plain language.

The rules governing the construction and interpretation of wills and trusts are set out in part 1 of division 11 of the Probate Code. As relevant here, the intention of the transferor "as expressed in the instrument" controls our interpretation. (§ 21102, subd. (a).) "The words of an instrument are to be given their ordinary and grammatical meaning." (§ 21122.) Where there are provisions in a will or trust that appear to conflict, the different parts "are to be construed in relation to each other and so as, if possible, to form a consistent whole." (§ 21121.) If the meaning of any part of an instrument is ambiguous or doubtful, "it may be explained by any reference to or recital of that part in another part of the instrument." (*Ibid.*) Further, "[t]he words of an instrument are to receive an interpretation that will give

11

every expression some effect, rather than one that will render any of the expressions inoperative." (§ 21120.) Accordingly, " ' "[i]n construing a trust instrument, the intent of the trustor prevails and it must be ascertained from the whole of the trust instrument, not just separate parts of it." ' " (*Estate of Cairns* (2010) 188 Cal.App.4th 937, 944; see also *McIndoe v. Olivos* (2005) 132 Cal.App.4th 483, 487 [same].)

Katherine contends that the proposed transaction violates the plain language of Article III of the will, which says that Michael's entire estate will be given to the trustees of the trust and "[a]ll such assets shall be held, managed and distributed as part of said Trust according to its terms." According to Katherine: "Michael's intention is crystal clear. Article III states in plain language that the 'entire estate' shall be given to the Trust. The Proposed Transaction does not give the entire Estate to the Trust. It does not give most of the Estate to the Trust. It gives none of the Estate to the Trust." In short, Katherine says, the probate court's order contravenes the will's plain language "because it makes impossible the transfer of the 'entire estate' to the Trust as required by Article III."

The primary flaw in Katherine's contention is that it assumes that Article III requires the executors to transfer to the trust the estate's assets largely as they existed at the time of Michael's death—that is, to "sell off as little of the Estate as possible after paying legitimate Estate debts . . . pending transfer of the Estate to the Trust." But nothing in Article III's plain language suggests a limitation of this kind. Further, as we have described, Article V gives the executors "full power and authority at any time or times to sell, lease, mortgage, pledge, exchange or otherwise dispose of the [estate] property, whether real or

12

personal . . . , upon such terms as [the] Executors shall deem best." In other words, Article V facially gives the executors the power to do exactly what the probate court's order permits—i.e., to sell estate property under terms deemed prudent by the executors. As the executors correctly note, Article V would be a nullity if Article III's bequest of the entire estate to the trust prohibited any changes to the composition of estate property after Michael's death.

Katherine asserts Articles III and V are fundamentally inconsistent with one another because Article III requires the executors to transfer the entirety of the estate to the trust, while Article V permits the executors to sell some or all of the estate to third parties. She thus urges that the probate court's order violates section 21121, which requires that " '[a]ll parts of an instrument are to be construed in relation to each other and so as, if possible, to form a consistent whole.' " She suggests: "The Proposed Transaction Order does not construe Articles III and V together; it completely ignores the former in favor of the latter."

We find no fatal inconsistency between Articles III and V. As the executors suggest, a common-sense interpretation that gives meaning to both articles is that (1) during probate administration, the executors can sell, invest, or otherwise manage estate property (Article V), and (2) when probate closes, the estate as it then exists will be distributed to the trust (Article III). In other words, only the trust may receive *distributions* from the estate, but prior to distribution the executors have full power to sell estate property as part of managing the estate. Such an interpretation is consistent both with section 21120, which directs us to construe the will in a way that "give[s] every expression some effect," and section 21121,

13

which requires us to construe the will's different parts "in relation to each other and so as, if possible, to form a consistent whole."

Katherine also contends that the probate court's order contravenes basic rules of will interpretation because it "makes impossible the transfer of the 'entire estate' to the Trust as required by Article III, instead giving the Estate's single most valuable asset to a new company, and one owned only partly by the Estate." Were the effect of the court's order to "give" an estate asset to a third party, we might agree that the order violates the will: As Katherine correctly notes, only the trust may receive a distribution of estate assets under the language of Article III. But the proposed transaction is not a gift or distribution of estate assets—it is an asset *sale*, pursuant to which the estate receives a significant monetary payment and interest in a joint venture in exchange for the transfer of assets. As we have said, such a sale is authorized by Article V of the will, which gives the executors "full power and authority" to "sell" or "otherwise dispose of" estate property. Accordingly, while the proposed transaction will result in the estate exchanging assets for cash and other valuable rights, it neither diminishes the estate's value nor impairs the executors' future ability to transfer the estate's assets to the trust.

Katherine next contends that the proposed transaction violates section 21120, which provides: "The words of an instrument are to receive an interpretation that will give every expression some effect, rather than one that will render any of the expressions inoperative. Preference is to be given to an interpretation of an instrument that will prevent intestacy or failure of a transfer, rather than one that will result in an

14

intestacy or failure of a transfer." Katherine urges that the proposed transaction "violates both parts of section 21120. It renders Article III 'inoperative' because Article III requires the 'entire estate' to go to the Trust, and the Proposed Transaction makes that impossible by giving the [trust assets] to a new company instead. Likewise, the Proposed Transaction Order results in the 'failure of a transfer' because it directs transfer of the [trust assets] to the new company instead of to the Trust, as the Will provides." Not so. As we have said, the proposed transaction does not gift assets to the new company; it *exchanges* some estate assets for others. Those assets will eventually be transferred to the trust, and thus there is no " 'failure of a transfer.' "

Positing a fatal inconsistency between Articles III and V, Katherine urges that the probate court should have followed the purported dictates of Article III because it precedes Article V in the will. But as we have said, there is no such fatal inconsistency because the will may be interpreted in a manner that gives meaning to *both* Articles III and V.

*Estate of Fromm* (1970) 5 Cal.App.3d 297, on which Katherine relies, does not suggest a different conclusion. That case considered two provisions of a will: one that was "clear, absolute and unqualified," and a second that was "not so clear." (*Id.* at p. 302.) The Court of Appeal noted that under settled law, "when the words of a will indicate an intent to make a clear gift or devise, . . . *such gift is not to be eliminated* by any subsequent provision in the will which is of indefinite or doubtful expression." (*Ibid.*) Applying that principle, the court held that the ambiguous second provision should be interpreted in a manner

15

consistent with the "clear, absolute and unqualified" first provision. (*Ibid.*, italics added.)

*Estate of Fromm* has no application here. Articles III and V of Michael's will are equally clear and, as we have said, can be interpreted in a manner that gives meaning to both. Moreover, unlike *Estate of Fromm*, there is no issue here of "eliminat[ing]" a gift or devise: The proposed transaction, if approved, will change the *form* in which some estate assets are held, but it will have no effect on *who* will receive the benefits of the estate.[5]

For all the foregoing reasons, therefore, the proposed transaction does not violate the terms of the will.

## B. Katherine's remaining contentions lack merit.

Katherine makes several additional arguments: namely, that the probate court's order violates general provisions of the Probate Code and Michael's wishes. These contentions lack merit.

First, Katherine contends that the probate court's order violates well-established law requiring executors to preserve an estate's assets pending distribution. Not so. Unquestionably, a primary duty of an executor is "to take reasonable steps to preserve the assets of the estate." (*Estate of Beach* (1975) 15 Cal.3d 623, 639; *Baker Manock & Jensen v. Superior Court*

---

[5] *Estate of Hilton* (1988) 199 Cal.App.3d 1145, 1172 also is not relevant to our analysis. The central issue in *Estate of Hilton* was whether an estate's executor could, by selling an estate's stock and converting the form in which a charitable foundation created by the testator was held, eliminate the testator's son's rights under a will. Manifestly, that analysis has no application to the present case.

16

(2009) 175 Cal.App.4th 1414, 1423 [same].) But the duty to "preserve" estate assets does not require that an executor maintain particular items of estate property in the estate— instead, it requires executors "to take affirmative steps to prevent deterioration in [estate] value," including, in some cases, by "sell[ing] [estate property] before it depreciate[s] in market value." (*Estate of Beach*, at p. 639; see also *In re Estate of Porter* (1900) 129 Cal. 86 [directing trial court to grant administrator's petition for order permitting sale of real estate in order to conserve estate].)

Second, Katherine contends that the probate court's order violated section 10000, subdivision (b), which permits an executor to sell estate property if the sale is "to the advantage of the estate and in the best interest of the interested persons." Katherine urges, without explanation, that selling a substantial portion of trust assets "cannot reasonably be deemed a cognizable 'advantage to the estate.'" But the probate court found otherwise, concluding that the proposed transaction was in the estate's best interests, "obtained the best deal for the Estate," and "maintains a safety net." Katherine points to no evidence that would support a contrary conclusion.

Third, Katherine contends that under *Estate of Beach*, *supra*, 15 Cal.3d at pp. 636–639, executors have the authority only to "preserv[e] . . . the probate estate"—not to "make the [estate's] assets profitable and . . . otherwise diversify the [estate's] portfolio." Not so. The issue in *Estate of Beach* was whether executors could be liable for failing to act as prudent investors, *not* whether executors had the authority to do so. While *Estate of Beach* held that an executor could not be held liable for failing to act as a prudent investor, it did not suggest

17

that an executor lacked the authority to prudently invest estate assets.  (*Ibid.*)

Finally, Katherine contends that the proposed transaction violates Michael's intent, as expressed to members of his family, to keep the estate assets in the family in perpetuity.  But as the executors note, it is the intent of the testator *as expressed in the will* that controls (§ 21102, subd. (a) ["The intention of the transferor as expressed in the instrument controls the legal effect of the dispositions made in the instrument"]), and extrinsic evidence is admissible only to establish a meaning to which the will's language is reasonably susceptible (*In re Estate of DeLoreto* (2004) 118 Cal.App.4th 1048, 1053; *Estate of Dodge* (1971) 6 Cal.3d 311, 318).  Here, the will gave the executors broad powers of sale, with no exception for the specific assets at issue in this case.  As such, the probate court did not err in concluding that it was Michael's intent to allow the executors to sell any estate assets, including those at issue in the proposed transaction.

## DISPOSITION

The order is affirmed.  Respondents are awarded their appellate costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

EGERTON, J.

ADAMS, J.

19